WM. H. SMITH, *as Treasurer of Marshall County,* v. THE CITY OF FRANKFORT.

No. 1.

TAXATION—*Sale by County Treasurer*—*Distribution of Taxes.* Where, at an annual tax sale, certain lots in a city of the third class were offered for sale by the county treasurer for the delinquent taxes and assessments thereon, including assessments made for the building of a sidewalk, and such lots could not be sold for the amount of the taxes, assessments and charges thereon, and they were accordingly bid off by the county treasurer in the name of the county for such amount, and thereafter a sum of money equal to the cost of redemption was paid into the county treasury by a party to whom a certificate was issued in conformity to law, *held,* that, upon demand therefor, the county treasurer should pay such city the full amount of the taxes, including the sidewalk assessments, together with the statutory interest thereon, as paid by the person to whom the said certificate was issued.

MEMORANDUM.—Error from Marshall district court ; R. B. SPILMAN, judge. Proceeding in *mandamus,* brought by The City of Frankfort against William H. Smith, as treasurer of Marshall county, to compel payment of certain moneys. Judgment for plaintiff. Defendant brings the case here. Affirmed. The facts are stated in the opinion herein, filed December 14, 1895.

*W. A. Calderhead*, and *E. H. Hutchinson*, for plaintiff in error.

*James B. Van Vliet*, for defendant in error.

The opinion of the court was delivered by

GILKESON, P. J. : Action in *mandamus* to compel the plaintiff in error to pay to the defendant in error certain sums of money collected by him, to wit, interest and penalties upon delinquent taxes levied by the defendant in error for special sidewalk improvements. The facts are : In 1882 the city of Frankfort, by ordinance, caused certain sidewalks to be built within its corporate limits, and in payment therefor issued to the contractor its warrants or scrip, bearing 10 per cent. interest from January 1, 1883.   In 1884 the city made an assessment for these improvements upon lots 10 and 11, in block 95, and lot 24, in block 27, for the sum of $94.66 per lot ; and thereafter this assessment was certified to the county clerk of Marshall county to be, and was, placed upon the tax-roll of the county to be collected.   These assessments were unpaid, and the property was offered for sale at an annual tax sale.   There being no purchaser, they were bid off by the county treasurer, September, 1, 1885.   In 1887, June 16, one George A. Walker offered to, and did, pay the amount due thereon, and certificates were issued by the county treasurer, and assigned to him by the county clerk.   The amount received· by the county clerk included all penalties, costs, and charges, and interest up to June 16, 1887.   Of the amount received, the county treasurer turned over to the treasurer of the city of Frankfort the sum of $283.98, being the actual or face amount of the assessments made upon this · property, retaining the interest and penalties.

The city brought this action to compel the county treasurer to pay to it the penalties and interest on the taxes and penalties from the time said property was bid off, September 1, 1885, until the certificates were issued, June 16, 1887. The court below held that the city was entitled to the interest, and the county to the penalty, and granted the peremptory writ of *mandamus*, requiring the plaintiff in error (defendant below) to pay over to the plaintiff below (defendant in error) the sum of $121.23, being the amount of interest received. Of this the defendant complains, and brings the case here for review.

The question presented for our consideration has never been passed upon in this state, and we have been unable to find among the vast number of adjudications upon the subject of taxation anything in line with it under statutes like ours; and only after careful examination of the system and theory of taxation, as shown by the statutory enactments of this state from its earliest history to the present day, have we been able to arrive at a conclusion that is entirely satisfactory to us. If, in connection with the system of taxation, we trace the history of cities of the third class in Kansas, we find that they came into existence under the act of March 1, 1869, which went into effect July 12 of that year; and prior to that time, under chapter 108, General Statutes of 1868, incorporated towns and villages were the municipalities of a corresponding grade (out of these cities of the third class were created), and they were governed by a board of trustees with certain powers expressly conferred upon them; among others, " to build sidewalks, and *to recover from the owner* and occupiers of the adjacent lots the *full expense thereof, by action of debt* in the name of the corporation." Now, it is fair to presume that

when the trustees recovered in their action they received *interest* upon the debt, and we cannot believe that it was the intention of the legislature, when it elevated these towns and villages to the dignity of cities (creating additional officers for them to support, and in other ways increasing their expenses), to deprive them of any of their resources, unless it is expressly so declared, or the inference so plain from the terms of the act that no other conclusion can be reached.    And neither of these conditions exists.    On the contrary, we find that the provisions of the tax law with reference to municipal authorities, certifying taxes to the county clerk to be placed upon the tax-roll, the collection thereof by the county treasurer and his duty upon collecting are substantially the same now as in 1868.

But the plaintiff in error contends that "the law for the assessment, collection and disbursement of taxes, penalties and interest thereon must be found expressly written in some statute, and is not to be inferred from what is written or from what is not written."    Let us apply this rule to a few sections of the tax law and notice the result: "All *taxes and assessments* levied under authority of this act shall be certified to the county clerk  .  .  .  to be placed upon the tax-roll for collection," etc., etc. (Gen. Stat. 1889, ¶ 968, cities of the third class.)    Here we find "expressly written" in the statutes that *taxes* and *assessments* shall be collected.    Again: "All *taxes* collected by the county treasurer are to be paid over to the city treasurer as fast as collected," etc., etc. (Gen. Stat. 1889, ¶ 969, cities of the third class.) Now, under the rule adopted by the plaintiff in error, what becomes of the *assessment* after it is collected? There is nothing "expressly written" in the statutes,

and we cannot infer it from what is or what is not written.   Does the county treasurer keep it?   We think not; but we only think so from inference.   The clear intention of the law is, that he shall turn over the assessment, and the word *taxes* is here used in its general sense, and includes assessment, and we are compelled to hold that it also includes interest, it being merely an incident to the tax.

Our attention is specially called to the proviso in paragraph 6940, General Statutes of 1889, "Taxation" ( and great stress is laid upon it), which reads :  "*Provided*, All penalties shall be credited to the county fund, and all rebates charged to the same fund."   Now, if we apply the rule requested by plaintiff in error to this, we find that the only thing expressly written is in reference to the *penalties* and *rebates*.   There is not the slightest reference therein to interest, and certainly under this clause there is no authority either to charge or credit the county fund with any interest. Nor does it in any manner indicate how the interest shall be disbursed, and it is a very significant fact that, in all the legislation we have had in this state upon the subject of taxation, the law has always remained silent as to the disbursement of interest, clearly indicating that the legislature has always considered it as incident to and following the principal. So, we fail to find anything "expressly written" in any statute directing—much less authorizing—the county to retain the interest; and under what rule of law or equity it can be claimed that the county shall be benefited by the misfortune of the municipalities within its limits the plaintiff in error has failed to call our attention to, and we have been unable to find it.   Is it to compensate the county?   If so, for what? It has been paid all its costs, under a special pro-

vision of the statute. Is it for risk incurred? There is none. It is not responsible to the city if its taxes are not paid. No obligation is imposed upon it by the statutes for these taxes; nor is there any authority given for it to assume any. True, the law imposes certain duties on the county officers in the collection of these taxes, but these duties are imposed on the officers, not on the county, and if any compensation is to be rendered it should be to the officers, not the county. The officers, not the county, are the agents of the city in the collection of its taxes, and they are collected by them for the benefit of the city, and the city has the sole right to the benefit derived, as well as the right to compel the officers to perform these duties. The city has contributed its share to the salaries of these officers, and the amount thereof does not in any manner depend upon the collection of the city taxes. It would be the same if there was not an organized city within the county limits, provided the population justified it; so the question of compensation, at least, so far as the county or its officers are concerned, is out of the question. On the other hand, what is the object of the interest? We think it twofold: (1) To imburse the municipality entitled to the tax for the delay in receiving it; (2) to reimburse it for any expense the delay has caused. And it is admitted in this case, that for this identical tax the city was compelled to issue its warrants, drawing 10 per cent. interest, to meet its obligation to the workmen who built these sidewalks; and why the city should be compelled to pay its debts with funds which cost it 10 per cent. interest to obtain, and not receive from the parties primarily indebted to it for the work the interest the law says they shall pay for the privilege of withholding this money and using it

for some other purpose, we cannot understand.   It seems to us as a mere business proposition that the city is entitled to the interest.

But the plaintiff in error contends that these lots have been sold to the county, and consequently the county is entitled to the interest up to the time they are redeemed.   We think not.   In one sense it is a sale ; more properly speaking, a disposition of them for a time ; certainly not a sale in the strict acceptance of the term, which implies a consideration paid. The county does not become possessed of anything more than it originally had, nor has it parted with one cent, or become liable to any one for even that amount.   It does not in any respect stand in the position of a purchaser.   It has no option, no choice in the matter.   It merely by statutory enactment has placed in its name that which no one else would purchase.   Further than this, it could not purchase if any one else desired so to do, but is prohibited by law from so doing.   It does not even receive the evidence of title.   No certificate is issued to it, nothing to show that it has any more interest in it at the date of the sale than it had on the 1st of November, when it was placed on the tax-roll, viz., the record of the treasurer's office.   It is merely transferred from one record to another to await purchase or redemption, while, on the other hand, the purchaser receives a certificate, which, in time, entitles him to a deed.   He becomes the owner.   His title is only defeasible by redemption, and that which he purchases will ripen into an absolute title.   This can never happen to the county. Paragraph 6960 provides : '' The person   .   .   .   offering to pay the taxes and charges   .   .   .   shall be the purchaser.''   Paragraph 6962 :   ''·The county

27—2 APP.

treasurer may, in his discretion, require immediate payment, . . . and in all cases where payment is not made in 24 hours after the bid, he may declare such bid canceled and sell the land again, or may sue the purchaser.'' Paragraph 6965 : '' The county treasurer shall give each purchaser, on payment of his bid, a certificate, . . . which certificate shall be assignable. . . . All asssignments shall be entered on the treasurer's sale book and the clerk's duplicate.'' Paragraph 6963 provides : '' If any parcel of land cannot be sold for the amount of taxes and charges thereon, it shall be bid off by the county treasurer in the name of the county for such amount.'' Paragraph 6966 : '' When any land or town lots shall . . . be bid off by the county treasurer for the county, it shall be the duty of the county treasurer to enter the same on the book of tax sales, in the same manner as though such land or town lots were sold to other purchasers. . . . Whenever any person shall pay into the county treasury a sum of money equal to the cost of redemption . . . the county treasurer shall give such person a certificate.'' The argument advanced by plaintiff in error is, that if some one had purchased the lots at the time they were bid off to the county, and held them as long as the county did, the owner who then offered to redeem them would have to pay the amount of the tax and interest to the holder of the certificate, and he would have kept it. Certainly he would, for, from the date the party purchased, the city would have no interest therein. It would have been transferred to the purchaser, he having paid the city, through the county, all it was entitled to up to that date ; and if the county treasurer did his duty, the city would at once

have received all it was entitled to, viz., the tax and interest up to the date of the purchase.

The judgment of the district court will be affirmed.

All the Judges concurring.