THE STATE OF KANSAS, *ex rel.,* J. C. TARR, v. J. T. HAUGHEY, *Treasurer of Miami County,* Respondent.

*Application for a Writ of Mandamus.*

*Decided at July Term,* 1869.

REDEMPTION FROM TAXES:—The land sought to be redeemed by this proceeding, was struck off to the county of Miami in September, 1862, for the taxes of 1860. No deed has been made therefor, nor has the certificate of said sale been assigned. On the 15th day of September, 1868, the relator being the owner of said land, tendered the full amount of the taxes, interest and costs, then due on said land, to the county treasurer

Statement of the Case.

of Miami county, and demanded a certificate of redemption therefor. *Held:* That under this state of facts the relator was entitled to redeem, and it was the duty of the county treasurer to make out the certificate of redemption.[*]

An original petition was filed in the Supreme Court for a writ of mandamus, to be directed to J. T. Haughey, as treasurer of Miami county, Kansas, to compel him as such treasurer to execute and deliver to the relator certain certificates of redemption for lands sold for the non-payment of taxes. The agreed statement of the facts contains a statement of the amounts of the taxes on the respective pieces of land described in the affidavit—the foundation for the application—for the years respectively from A. D. 1860 to 1867 inclusive, and a statement that the taxes on one of said pieces were, on January 10th, 1868, paid by A. for the year 1867, and on the other piece on January 5th, 1867, by B. for the year 1866, and that B. paid the taxes for the year 1867 on the last mentioned piece December 31st, 1867; "that certificates of sale of said land were duly issued by the treasurer" of Miami county to that county September 2d, 1862; that since that time there has been no written assignment of said certificates to any person; that on September 26th, 1864, tax deeds were made for the land to Miami county, by the clerk of that county, for the

[*]VALENTINE, J., *Dissenting:*

1. COUNTIES.—Counties are quasi corporations, possessing only the powers conferred by law.

2. TAXES: WHO MAY TAKE DEEDS.—Section 56, of tax law of '60, [Comp, L., 870,] and section 10, of amendment of '62 [Comp. L., 877] providing that the county clerk shall execute and deliver deeds to any lands sold for taxes unredeemed, within the time specified on presentation by the purchaser of the certificate of sale. Held : To apply to counties as well as to other purchasers. Guittard Township v. Marshall County, 4 Kas., 388, and State, ex rel., Brumbaugh v. Magill, id., 415 contra.

3. CERTIFICATES: ASSIGNMENT OF.—A county having bid off lands for taxes, by assigning a certificate of sale, can give no more title or rights than it holds.

4. COMMISSIONERS TO TAKE DEEDS.—Semble, the county commissioners would be the proper officers to procure tax deeds for the county, if such power exists.

5. PURCHASERS AT SALES.—A distinction is made in the statute between counties and individuals purchasing at tax sales, but not as to exclude the former from purchasing.

6. STATUTORY CONSTRUCTION, SALE CERTIFICATES.—It seems, section 9, [L. '64, p. 42,] prohibiting the sale certificates from being assigned to counties, is not retroactive, nor is it a legislative construction of former laws.

taxes on the land previous to that time, and upon said certificates; that on September 14th, 1866, A., and on October 1st, 1866, B., tendered and paid to said treasurer a sum of money equal to the amount required at that time to redeem said tracts of land respectively, and that the moneys were accepted by the treasurer; that the object of that payment was to purchase whatever interest the county had in the lands at that time; that owing to a mutual mistake of law by A. and B. and said county clerk, treasurer, and the board of commissioners of said county, in lieu of a written assignment of the certificates of sale to said A. and B., and in lieu of a deed made by the county clerk to said A. and B., a deed was made by the said board to said A. and B. respectively; that the original certificates of sale, ever since September 2d, 1862, have remained in the custody of the proper officer, and have not been assigned to said A. or B. or to any other person, and that at the time of the application of the *relator* to the *respondent* to redeem said land, no proof was made to the said respondent of the relator's ownership of or title to said land, at the time of the tax sales or at any other time, and no such proof was demanded by said respondent as treasurer; that no taxes on said land subsequent to October 1st, 1864, were endorsed upon either of said sale certificates.

*Henry Keeler*, for relator.

*Simpson & Stevens*, for respondent.

*Simpson & Stevens, for respondent,* submitted:

1.  The relator does not aver that title to the lands which he seeks to redeem, was vested in him at the time of the sale; nor that he proved or offered to prove to the defendant at the time of the attempted redemp-

tion that such title was so vested, or that he had any interest therein at any time whatever. The relator therefore is not entitled to the certificate of redemption. *Comp. L.* § 7, 876; *Blackw. Tax Tit.*, 421, 402, 423.

2. This section was the law in force at the time of the sale, execution and delivery of certificate of sale, and under its provisions alone the redemption must be made. And its subsequent repeal can not affect rights vested under it. *Comp. L.*, § 1, *p.* 837, *Blackw. Tax Tit.*, 298, 299, 432, 433, 475, 476, 477, 478, 479 and 480. *Robinson v. Howe*, 13 *Wisc.*, 341.

3. Under the provisions of this section, in force at the time of sale, a redemption from sale could only be made by the person in whom the title to the land vested at the time of sale, and within two years therefrom. [*Comp. L.*, § 7, *p.* 876.] This time had elapsed more than four years prior to the attempted redemption; hence such right had become extinct.

4. A certificate of sale of land for non-payment of taxes, is a contract in which it is stipulated that the holder is entitled to receive a deed of the land at the expiration of the time prescribed by law for redemption, unless the land is sooner redeemed.

And such certificate is by statute made assignable, the same as bonds for the conveyance of lands. *Comp. L.*, §§ 43, 44; *Robinson v. Howe*, 13 *Wisc.*, 341; *Bruce v. Schuyler*, 4 *Gilman*, 221; *Blackw. Tax Tit.*, 476.

5. The assignee of such certificate of sale can have no more rights by virtue of the assignment than the original holder. *Judd v. Driver*, 1 *Kas. R.*, 455.

6. It is presumed that the relator claims the right of redemption notwithstanding the lapse of more than two years from the time of sale, because of the provisions of section 111, chapter 107, General Statutes of 1868.

Which section provides, that any person, whose lands have heretofore been sold to any county, and remain in the hands of said county, may redeem the same by paying the principal, costs of sale and ten per cent interest. In fact, in the case at bar, the lands sought to be redeemed do not remain in the hands of said county, having been purchased therefrom by individual purchasers. But grant, for the argument, that the lands in question were in the hands of the county on the 15th day of September, 1868, the time of the attempted redemption, would that fact change the proposition, that the certificate of sale, executed by the county treasurer to Miami county, September 2d, 1862, constituted a "contract" the "obligations" of which could not be "impaired" by a subsequent act f the legislature enlarging the time of redemption, or the amount of money necessary to effect such redemption? We think not.

7. The section of the statute, last referred to, as in fact all other statutes, must be construed so as to harmonize, not only with the organic law of the land, but with other provisions of statutes, if such construction be possible.

8. The object of the section in question was the immediate acquisition of revenue, and which acquisition would be facilitated by discounting all interest above ten per cent.

9. If it be conceded that it was the intent, and such intent was clearly expressed, that the owner of land sold to and still held by the county might redeem the same from such sale at any time, although the sale certificate and the law under which the sale was made, both provided that such right of redemption should cease and become extinct at the termination of two years from the day of sale, then most clearly such enactment was pal-

pably in violation of the "obligations" of the "contract" of sale, destructive of vested rights, unconstitutional and void.

10. Can it be claimed with any show of reason that the sale certificate is any less a "contract," around which the ægis of the constitution is thrown, because of its being held and owned by the county? No statute now, or that ever has been in force in this state, makes any distinction between the terms and legal effect of certificates of sale executed to or held by a county and those executed to or held by individuals, so far as relates to the right of redemption. In either case it is stipulated when the right of redemption shall become extinct; and such agreement embodied into the certificate and in conformity to the letter of the statute becomes a part of its "obligations" that cannot be "impaired" by repeal of the law in force at the time of sale, or by subsequent enactment. *Comp. L.*, §§ 43, 44, *p.* 867, § 1, *p.* 837; *Blackw. Tax Tit.*, 298, 299, 432, 433, 475, 476, 477, 478, 479, 480; *Bruce v. Schuyler*, 4 *Gilman*, 221; *Robinson v. Howe*, 13 *Wisc.*, 341; *Butler v. Chariton County Court*, 13 *Mo.*, 112.

The certificate of sale is none the less a "contract" because of its having been entered into by the state as one of the contracting parties. *Fletcher v. Peck*, 6 *Cranch R.*, 87.

11. There may be a permissive redemption after the period of the right of redemption has elapsed; and such kind of redemption may have been contemplated in the enactment of section 111, chapter 107, general statutes, 1868. *Coxe v. Walcott*, 3 *Casey*, 154.

12. But in fact the certificate of sale of the lands in question had been sold by the county prior to the 15th day of September, 1868, so that if such demand had

been acceded to by the defendant, it would not only have been in disregard of the obligations and liabilities of the officers of the law to deed to the holders of such sale certificates the land so sold, but also in like disregard of the vested rights of the purchasers of these sale certificates; and had the county treasurer refused, or should he hereafter refuse to assign said sale certificate to said purchasers, he could be compelled to do so by the writ of mandamus. *Comp. L.*, § 43.

13. The relator is not entitled to the writ of mandamus in this case, because he has a "plain and adequate remedy in the ordinary course of the law." He might, if entitled to the certificate of redemption at all, enjoin the clerk from executing the tax deed to the land; or he might set up such tender for redemption to defeat a tax deed executed after such tender, in an ejectment suit brought by relator to recover said land. [*Comp. L.*, § 581.] Our statute upon the subject of the jurisdiction of the court to issue the writ of mandamus has not changed the common law rule established and recognized in the Court of King's Bench. *State of Kansas, ex rel., Price v. Carney, et al.*, 3 *Kas. R.*, 93; 3 *Blackst.*, 42; *Moses on Mandamus*, 16, 17, 18, 104, 105, 124; *The People v. the Supervisors of Chenango County*, 1 *Kern.*, 573.

The right of relator must be clear. *Moses on Mandamus*, 124, 135. The issuance of the writ is discretionary. *Moses on Mandamus*, 18.

14. The relator is not entitled to the writ of mandamus to enforce the execution and delivery of the certificate of redemption, because the performance of that act, especially in this case, is not ministerial in its character, but requires the exercise of legal judgment and decision, as is obvious from the manifold questions presented to this court for its solution. *Comp. L.*, § 580,

*Chap.* 26; 2 *Burrill's Law Dic.*, 177; *Ross v. Robinson, et al.*, 1 *Kas.*, 186; *Moses on Mandamus*, 78, 79, 80; *Decatur v. Paulding*, 14 *Pet.*, [*U. S.*,] 497; *The United States, ex rel., Tucher v. Seaman*, 17 *How. R.*, 225.

*By the Court:*—No opinion was filed other than that expressed in the syllabus heading the case, but after the disposal thereof, on December 29th, 1869, there was filed the following:

*Dissenting Opinion,* VALENTINE, J.

In this case I am under the necessity of dissenting from the decision of the court.

In the year 1860, taxes were levied upon the land in controversy, and on the 2d day of September, A. D. 1862, the land was sold for the same, to said Miami county.

So far everything seems to be regular, as there is no complaint, on the part of the relator, of any irregularity.

But on the 26th day of September, A. D. 1864, tax deeds for said lands were made in pursuance of said sale, by the county clerk, to said Miami county; and on the 14th day of September, A. D. 1866, John Austin bought a portion of said land from Miami county, and took a deed for the same from the county commissioners, and on the first day of October, A. D. 1866, Richard Blalock bought the rest of said land from Miami county, and also took a deed for the same from the county commissioners.

The original tax sale certificates were not then, nor have they been since assigned to Austin and Blalock, or to any one else.

These proceedings, to-wit: the tax deeds from the county clerk to Miami county, and the deeds from the

county commissioners of Miami county to Austin and Blalock, the relator claims were without any authority of law, and are therefore absolutely void; not void because the time for redemption had not expired long before either was done; not void because tax deeds were not due, if tax deeds are ever due in such cases; but void because no county is ever, as the relator claims, entitled to take a tax deed under any circumstances whatever.

Although there are other questions raised in this case, yet the only one that I shall consider is whether these proceedings are void or not. The court decides that they are void. I think they are not void, but that they are fully authorized by law.

Before proceeding to the argument of the question, I shall state some other facts necessary to be known, in order that the question may be more intelligibly understood.

On the 15th day of September, A. D. 1868, J. T. Haughey, the respondent, was and still remains treasurer of Miami county. J. C. Tarr, the relator, was at the time of the levying of the taxes, and still remains the owner of said lands, subject, however, to said taxes and the tax liens and tax titles thereon obtained. On the 15th day of September, A. D. 1868, said Tarr tendered to the respondent a sufficient sum of money to redeem said land from said taxes, provided it was still subject to redemption. The respondent refused to accept the money, or to issue a certificate of redemption. This is the only act of the respondent that the relator complains of, and, without commencing any action against Austin and Blalock, who claim to be the owners of the land, or without making them parties to any suit or proceeding, he applies directly to this court for a writ of mandamus *to compel the respondent to issue to him a certificate*

*of redemption*, imagining, I suppose, that this proceeding will determine conclusively all questions of right between himself and Austin and Blalock.

The court have allowed said writ, and in doing so have followed the decisions in the cases of Guittard Township v. Marshall County [4 *Kas.*, 388] and The State, *ex rel.*, Brumbaugh v. Magill, [4 *Kas.*, 415,] which decisions, with due deference to the learned court that rendered them, with my construction of our statutes, I cannot recognize as good law.

COUNTIES QUASI Corporations. Counties are *quasi* corporations, holding just such powers as are conferred upon them by the legislature of the state.

Probably no one questions the *authority* of the legislature to confer upon counties the power to purchase and hold tax titles, and to sell them again, and to do so in the manner that it was done in Miami county; but whether the legislature has conferred such powers upon counties is the controverted question, and the one presented to us for our consideration.

POWERS OF: Section one [*Comp. L.*, 409] reads as follows: " That each organized county within this territory [state] shall be a body corporate and politic, and as such shall be empowered for the following purposes: First, to sue and be sued; Second, *to purchase and hold* real and personal estate for the use of the county, and *lands sold for taxes*, as provided by law; Third, *to sell and convey any real or personal estate owned by the county, and make such order respecting the same as may be deemed conducive to the interests of the inhabitants;* Fourth, to make all contracts and *do all other acts* in relation to the *property* and *concerns* of the county necessary to the exercise of its corporative or administrative powers; Fifth, to exer-

cise such other and further powers as may be specially conferred by law."

On pages 866 and 867 of the Compiled Laws, there is provision for the sale of lands for delinquent taxes, and to the effect that any person may bid on such lands, etc.

Section forty-two, [*p.* 867, *Comp. L.,*] reads as follows: " If any parcel of land cannot be sold for the amount of tax, penalty and charges thereon, it shall be bid off by the county treasurer for the county for such amount."

Section forty-three [*same page*] provides that " the county treasurer shall give to each purchaser, on the payment of his bids, a certificate, dated the day of the sale, describing the lands purchased, the amount paid therefor, *and the time when the purchaser will be entitled to a deed*, which certificate shall be assignable; and any person's *interest therein may be transferred* by a written assignment indorsed upon or attached to the same, and such assignment shall have the same force and effect as the assignment of bonds for the conveyance of lands."

Section forty-four [*same page*] reads as follows: " If any lands or town lots shall be bid off for the county, the treasurer shall make a certificate to the county *similar to that specified in the preceding section*, which certificate shall be assignable by the county treasurer *in like manner* as those given to *other purchasers;* and such certificate shall be subject to purchase by any person offering to pay therefor a sum equal to the cost of redemption at any [that] time."

REDEMPTION from Tax Sale.   Section fifty-six, [*Comp. L.*, 870,] as it originally stood, and the first part of the same section as amended, and numbered ten, [*Comp. L.*, 877,] reads as follows: " If ANY LANDS *sold for taxes* shall not be redeemed within the time specified by law, the county clerk of the county where the same was sold shall, on

the *presentation to him of the certificate of sale*, execute in the name of his county, as county clerk, under his hand and seal, to the *purchaser*, his heirs and assigns, a deed of the land so remaining unredeemed, and shall acknowledge the same, which shall vest in the grantee an absolute estate in fee simple in such lands, subject, however, to all unpaid taxes and charges which are a lien thereon; and such deed, duly witnessed and acknowledged, shall be *prima facie* evidence of the regularity of such proceedings, from the valuation of the land by the assessor, inclusive, up to the execution of the deed, and may be recorded with like effect as other conveyances of land."

It is claimed by the relator that this last section applies only to individual purchasers, and not to counties; but it is my opinion that no reason, even plausible, can be given for any such claim.

Can it be claimed that the sale to the county is not a *sale*, or that the certificate held by the county is not a *certificate of sale*, or that the county is not a *purchaser*? Every statute from the year 1858 down to the present time, that says anything upon the subject, recognizes the sale to the county as a *sale*, and the county as a *purchaser*.

But if the sale to the county is not a sale, how can the relator redeem his land at all? There is no authority in the law for him to redeem except from a sale, [3 *Kas.*, 371,] and he pays no interest on the taxes except interest that accrues *after* the sale; [§ 7, *Comp. L.*, 876;] and he must pay in cash when he redeems his land, except where the *county is the purchaser*, "and then he may pay the state, county, township and city taxes in their respective warrants or orders, and the certificate of redemption *must state the purchaser's name.*" § 8, *Comp. L.*, 876.

But as the time has long ago passed for the relator to redeem under these sections, he claims that he can re-

deem under section 111, General Statutes, 1054; but this section recognizes the sale to the county as a *sale* as much as the other sections do, and gives the relator no more or better rights than he had before, except that it extends the time for redemption, *provided* the land still remains in the hands of the county, and it reduces the rate of interest.

The section reads as follows :- " Any person whose lands have, prior to the passage of this act, been *sold* for taxes to any county, and *remain in the hands of the said county*, may redeem the same by paying the principal, costs of *sale* and ten per cent interest; or the county treasurer may transfer, in the manner provided in this act, the *certificate of sale* of said lands to any one who will pay all back tax, cost of *sale* and ten per cent interest."

This section does not itself provide for any *certificate* of redemption, but section 102 [*Gen. Stat.*, 1052] of the same act, which is in *pari materia*, does, and also provides that the certificate shall specify the *name of the purchaser*. Now if there was no sale, how will the Supreme Court order a redemption from a *sale?* How will they calculate the " cost of the sale," and at what time will they commence to compute the interest? Will they compel the respondent to issue a certificate of redemption at all, as none is provided for in said section 111? [*Gen. Stat.*, 1054;] and if they do will they require him to issue such a one as is described in section 102? [*Gen. Stat.*, 1052;] or in section eight? [*Comp. L.*, 876;] and compel him to specify in the certificate the *name of the purchaser* if there was no purchaser?

It is admitted that the certificate of sale given to a county may be assigned to an individual. Now, can the assignee of a county present his certificate to the county clerk and obtain a deed thereon? If he can it is because

the sale to the county is a *sale* and the county a *purchaser*, and the certificate a *certificate of sale*.

Under said section forty-four [*Comp. L.*, 867] the certificate given to a county must be *similar* to the one given to an individual, and the only imaginable difference is, that the one given to a county simply states the amount for which the land was *bid off*, while the one given to an individual must state the amount which the purchaser *paid* for the land. Both must state "*the time when the purchaser will be entitled to a deed*," and I would be very much surprised to learn that any county treasurer has ever issued a certificate to any county without stating this.

But suppose that counties are not entitled to take tax deeds at all; then why go through with the formalities of a sale and the issuing of a tax sale certificate to the county? and why leave a column in the book of tax sales, as well for counties as for individuals, for the name of the person to whom the land is to be *deeded* and the *date of the deed?* [*see* § 46, *Comp. L.*, 868;] and why should the county treasurer be required, "at least four months before the expiration of the time limited for redeeming lands sold for taxes, to cause to be published in some newspaper of general circulation in his county, once a week for four successive weeks, *a list of all unredeemed lands and town lots*," whether they have been purchased by the county or by individuals, "describing each tract or lot, together with a notice that unless such lands or lots be redeemed on or before the day limited therefor, specifying the same, *they will be conveyed to the purchaser*." *See* § 9, *Comp. L.*, 877.

If section fifty-six, [*Comp. L.*, 870,] as it originally stood and as amended and numbered section ten, [*Comp. L.*, 877,] applies to counties, then, of course, counties are

entitled .to take tax deeds; but suppose it does not apply to counties, then can it, by any reasonable or legitimate construction, be made to apply to the assignees of counties? Tax deeds are to be made to the "*purchaser*, HIS heirs and assigns." A tax deed may be made to any purchaser *named* in this section, or .to the assignee of any *such* purchaser, but not .to any other assignee. If counties are a class of purchasers not named in this section, then by no rule of construction can it be said that the assignees of counties are named therein; and it is the sheerest folly for any one to purchase from a county a tax sale certificate, expecting to realize any substantial benefit therefrom. There is no statute that gives or attempts to give, expressly or impliedly, to the assignees of counties, any more or greater rights than the counties themselves possess. It is the certificate under the statute that is sold and assigned; and nothing more than the mere *interest* of the purchaser, whether the purchaser be a county or an individual, passes to the assignee; [*see* §§ 43 *and* 44, *Comp. L.*, 867;] and upon general principles counties cannot assign more than they have to assign, or sell more than they own. The stream cannot rise higher than the fountain. *Nemo plus juris ad alienum transferre potest, quam ipse habet.*

This question has been substantially decided in this court in the case of Judd v. Driver. [1 *Kas.*, 455.] The court in that case say that "the liabilities of the owner of the land are not increased by the change of ownership in the tax certificate;" or, in other words, if the owner of the land is not liable to have his land encumbered by a tax-deed while the county owns the certificate, he stands in no danger of the same being done if any one else should purchase the certificate.

*Judd v. Driver [1 Kas., 155] and [4 Kas., 388, 415] Commented Upon.*

This is an excellent construction of the statutes for the man who is tardy in paying his taxes; for if his land is bid off to the county, no tax-deed can ever be made on that sale, and the lien that once existed on his land for the taxes is destroyed forever. Even if the lien has any theoretical existence, it is practically abolished; it can never ripen into any estate or title; it can never give the owner thereof any right to take possession of the land, or of anything pertaining thereto; it can never be practically enforced or be of any practical benefit or value to the owner thereof; it is practically no lien at all, and so long as the certificate of sale shall remain in the hands of the county, or if the certificate be assigned to an individual and he shall pay all the subsequent taxes, vainly hoping thereby to avoid losing what he has already paid, the land can never again be sold for taxes, but the owner of the land may enjoy his property unmolested and secure, and free from one at least of the great burdens of civilized society. This is the legitimate result of the decisions in 1 Kansas, 455; 4 Kansas, 388 and 415.

Perhaps I may here be allowed to propound the question whether the foregoing is the kind of title which counties may purchase, hold and sell, as contemplated in section one, [*Comp. L.*, 409,] where said section provides that counties, as bodies corporate and politic, shall be empowered to purchase and hold land sold for taxes, and to sell and convey any real or personal estate owned by the county?

Under section three [*Comp. L.*, 409] all "the powers of the county as a body politic and corporate shall be exercised by the board of county commissioners therefor," and if a county is entitled to take tax deeds at all on tax sales, and if there is no other provision with reference to the same, the county commissioners have full

and ample authority under this section to present the certificate and obtain the deed, and then dispose of the property as may be provided by law.

Under section ten [*Comp. L.*, 877] and section two, [*Comp. L.*, 409,] as soon as the county obtains a tax deed for the land, it becomes the property of the county, so far as any tax deed can convey property, and under section one [*Comp. L.*, 409] the county would undoubtedly have the right to sell it again to any one who would wish to purchase.   Section forty-eight [*Comp. L.*, 868] seems also to recognize the right of a county to buy and sell lands for taxes.   It provides that "no lands or town lots so bid off for the county shall be sold for any taxes levied subsequent to such bid, until it shall have been redeemed, *or shall be sold by the county*, or the tax certificate issued to the county shall have been assessed" [assigned.]   *See* § 96, *Gen. Stat.*, 1049.

Those who claim that counties are not entitled to take tax deeds base their arguments upon the following grounds:  *First*, upon certain distinctions made by the statute between counties and individuals;  *Second*, upon a supposed legislative construction of the statute;  *Third*, upon the seeming absurdity of a county deeding property to itself.

*First.*   It is true, as is claimed, that the statutes have made some distinctions between counties and individuals. Counties have no option in bidding on lands at tax sales, or in the assignment of the tax sale certificate, or in having the subsequent taxes entered upon the book of tax sales, and thereby saving the land from further sale, while individuals have, of course, entire option in all these respects.   And when the subsequent taxes are entered upon the book of tax sales, counties have nothing to pay, while individuals must pay the full amount

of the taxes. But not one of these distinctions has anything to do with the taking or not taking of tax deeds upon tax sale certificates, and there is no statute now in force, or that ever has been in force, that does make any such distinction. Is not the argument drawn from these distinctions about as plausible to prove that counties alone are entitled to take tax deeds, as it is to prove that individuals alone are entitled to that privilege? In my opinion neither argument is logical.

It is true that section nine [*p.* 72] of the laws of 1864 provides that tax sale certificates shall not in the future be issued to counties, but it can scarcely be supposed by anybody that this section has a retrospective action so as to invalidate tax sale certificates already issued.

*Second.* It is said, however, that this section last mentioned is a legislative construction of what the law already was. Now, I do not suppose any one will attach any great weight to a legislative construction of an act, which was passed four years previous to that time by the old territorial legislature, and I suppose I might properly pass on to the next point without further notice of this; but before doing so I will simply suggest that it is very difficult to understand how this section can be construed into a legislative construction at all. Perhaps it may be done upon this system of reasoning, to-wit: Whenever the legislature changes a law, they mean thereby to say that the law was the same before they changed it as it is afterwards.

*Third.* It is also claimed that it involves an absurdity to allow a county to deed land to itself. The deed, however, is made by the county clerk, and he is not the county. He is the agent of the state for that purpose, made so by the legislature of the state; and not only the county, but the state and the different townships, school

districts, road districts and municipal corporations of his county, are interested in his action. It is true, he executes the deed in the *name of the county*, but there is no doubt but that the legislature has full and ample power to authorize him to execute it in that name, or in any other name; and, as they have seen fit to authorize him to execute it in that name, it seems to me that that is the end of the controversy.

The Supreme Court of Wisconsin, in the case of Woodman v. Clapp, [21 *Wisc.*, 355,] say: "It is said there is an incongruity in requiring the county to be named as grantor and grantee in a deed which conveys land to itself; or, in other words, in the county being a grantor and grantee in the same deed. But this objection can have no weight, in view of the fact that the legislature has seen fit to prescribe that a tax deed given to the county shall be executed in this manner."

Whether this Court has obtained any new light upon the questions discussed in this case I do not know, as the opinion of the Court has not yet been filed; but with all the light that I have been able to obtain, I am clearly of the opinion that a writ of mandamus should not be allowed.

Writ of mandamus allowed.