No. 19,243.

J. SHONER et al., *Appellees*, v. GEORGE A. FRISBIE, as County Treasurer of the County of Jefferson, etc., et al., *Appellants*.

### SYLLABUS BY THE COURT.

TAXATION—*New Bridge Over Drainage Ditch—Costs Can Not Be Taxed Solely to Property Benefited by Drainage Ditch— Ultra Vires.* A board of county commissioners acting under chapter 204 of the Laws of 1891, authorizing it to establish and construct a drainage ditch, can exercise only those powers expressly conferred, and such others as are necessarily or fairly implied in, or which are incidental to, the power expressly granted; and where the express power granted is to construct the ditch and to levy taxes upon the property benefited thereby to pay the cost of construction and of keeping in repair the ditch and bridges over the same, the board has no implied authority to build a new bridge and to levy a tax upon such property to pay the cost thereof.

Appeal from Jefferson district court; OSCAR RAINES, judge. Opinion filed February 6, 1915. Affirmed.

*H. T. Phinney,* county attorney, for the appellants.

*S. D. Bishop,* of Lawrence, for the appellees.

The opinion of the court was delivered by

PORTER, J.: The plaintiffs brought suit to enjoin the collection of taxes levied against their lands by the board of county commissioners to construct and pay for a bridge on a public highway over what is known as the "Colley Ditch." The court overruled the demurrer to the petition, and the defendants, electing to stand on the demurrer, have brought the case here for review.

The Colley ditch was established and constructed in 1893 by the county board pursuant to the provisions of chapter 204 of the Laws of 1891. The ditch was built at the expense of the landowners benefited thereby, and, among other improvements, a small bridge was built where the ditch crossed a public highway. All the taxes levied for the construction of the ditch and bridges over the same were duly paid by the landowners benefited by the improvement. In 1913 the bridge in question had become out of repair and unsafe for public travel, and by order of the board of county commissioners, it was torn down and the road was closed. A resolution was then adopted by the board ordering a new bridge to be built across the ditch in this highway, and the board proceeded to levy the cost of the bridge on the lands benefited by the construction of the ditch. The old bridge was built of wood, and cost approximately $750; the new one will consist largely of concrete and iron, and will cost approximately $5000.

It is the plaintiffs' contention that the board has no authority to build a new bridge and to assess the cost of the construction against their lands, for the reason that under the act of 1891 the board's authority was limited to the repair of bridges, made necessary by the construction of the ditch.

There is no express provision in the act of 1891 by

which the board is given authority to levy a tax for the construction of new bridges, but the defendants contend that a consideration of the whole act shows that it was the intent of the legislature that the cost of any bridge made necessary by the construction of the ditch should be paid for by a tax levied upon the property benefited thereby, and that the authority to levy a tax for new bridges is necessarily implied from the powers expressly conferred. This contention is based upon certain provisions in sections 12, 13 and 15 of the act. In sections 12 and 13 it is provided that "the construction of all bridges made necessary by the construction of such ditch shall be let upon notice . . . in such manner as such board may deem best, . . . but neither said board nor said county shall in any event be liable under any contract made under this act to pay any money, unless the same shall be first collected and paid into the county treasury as provided in this act." Section 15 reads:

"If there shall be a surplus of the moneys so collected, over and above the costs and expenses of such ditch, such surplus shall be thereafter from time to time when necessary, applied by said board to the repairing and keeping up of such ditch. If there shall not be sufficient moneys so collected to pay such costs and expenses, and to make the necessary repairs, such additional amounts as the board shall deem necessary for that purpose may from time to time be apportioned, upon the basis reported by said viewers, against the said tracts of land, railroads, and highways, and collected in the manner provided in the foregoing section; the said board may cause such repairs of said ditch and the bridges over the same to be made from time to time, either with or without advertising for bids, and upon such terms and specifications as they may deem best, but such repairs must in every case be paid for out of moneys apportioned and collected as aforesaid."

The defendants make a further contention that the word "repair" should not be given a restricted meaning, but one broad enough to include the erection of a

Shoner v. Jefferson County.

new bridge whenever the old one became so dilapidated and out of repair that a new one became a necessity.

As to the defendants' first contention, it is true that the intent of the legislature is clearly expressed to the effect that the county shall never in any event be chargeable with the expense of any bridge made necessary by reason of the construction of the ditch, but that such expense should be borne by those persons whose property is benefited by the improvement. But construing the entire act together, it is seen that wherever the construction or repair of a bridge is mentioned, the bridge is referred to as one "made necessary by the construction of such ditch," and wherever any contract is authorized to be let by the county board it is a "contract made under this act."

The legislature might have provided, if it had seen fit, that where a bridge made necessary by the original construction of the ditch was subsequently destroyed or became so unsafe that a new bridge was required, the cost of such new structure should be imposed upon the landowners benefited by the construction of the ditch. But the legislature went so far only as to require that the cost of the original construction of any such bridge and of keeping it in repair should be paid by a tax levied upon the landowners of the district. Our conclusion, therefore, is that the power to levy a tax for the construction of a new bridge is one which can not be necessarily implied under the authority conferred by the act of 1891. Under this statute the board acts for the time being as a drainage board. Under its general powers it "can exercise only those powers expressly conferred and such others as are necessarily or fairly implied in, or which are incidental to, the powers expressly granted. Beyond these it takes nothing by implication." (*Brown v. The State,* 73 Kan. 69, 71, 84 Pac. 549.)

(See, also, *City of Leavenworth and others v. Norton and others,* 1 Kan. 432, 436; *Felker v. Elk County,* 70 Kan. 96, 78 Pac. 167.)

As to the second contention, we see no reason for extending the ordinary meaning of the word "repairs." To "repair" has been usually construed to mean the making over of something which is in existence. (*State v. White,* 16 R. I. 591, 18 Atl. 179; 34 Cyc. 1336, 1340; 7 Words and Phrases, p. 6096 *et seq.;* 4 Words and Phrases, Second Series, p. 271 *et seq.*). The words "necessary repairs" are plain and unambiguous, and the legislature must be considered as having used them in the sense in which they are ordinarily understood.

It is clear that the authority given in the act to repair the old bridge does not by necessary implication carry with it the power to build a new bridge to cost nearly seven times as much as the old one, notwithstanding the erection of a new bridge may be found to be necessary.

It follows, therefore, that the demurrer was rightly overruled, and the judgment is affirmed.

DAWSON, J., not sitting.