No. 34,337

THE STATE OF KANSAS, ex rel. ELI EUBANKS, County Attorney of Sedgwick County, *Appellee,* v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF SEDGWICK and L. S. MAYER, *Appellants.*

(91 P. 2d 2)

Opinion filed June 10, 1939.

*A. M. Ebright, P. K. Smith, Bernard Peterson* and *R. A. Hickey,* all of Wichita, for the appellants.

*Tom Harley,* county attorney, *Robert H. Nelson, Harold A. Zelinkoff, Grey Dresie, J. Ashland Manka* and *Clayton Walton,* deputy county attorneys, for the appellee.

The opinion of the court was delivered by

HOCH, J.: This action was brought under the declaratory judgment statute (G. S. 1935, 60-3127 to 60-3132) in the district court of Sedgwick county to determine whether the county commissioners of that county had a right to enter into a contract with a private individual, for a money consideration, to furnish information and offer

testimony in proceedings held for the purpose of adding to the tax rolls intangible properties not voluntarily returned for taxation by the owners. The action was brought by the state on the relation of the county attorney, and the proposed contract was set out for the scrutiny of the court. The district court held that the contract was *ultra vires,* and therefore invalid, and the county commissioners appeal.

In the trial court the parties submitted a stipulation as to the facts and circumstances leading up to the making of the proposed contract.

What may be called the preamble of the contract recites in substance that it is the belief of the county commissioners that in spite of the efforts of the assessors and their deputies a large amount of intangible property owned by foreign corporations and properly taxable in the county was not being returned and was escaping taxation; that in order to secure information which would lead to the discovery of such properties and their proper listing for taxation it was necessary to secure the services of an expert who had wide experience in such matters, who had accumulated records and other information which could be produced and would reveal the facts concerning such intangible properties, and that one L. S. Mayer was such a qualified expert, and that subject to judicial determination of their power under the law to do so they had entered into a contract with him for furnishing such services.

Under the terms of the proposed contract Mayer agreed to furnish general information in his possession as to the whereabouts of "escaped and omitted properties," to permit the use of the records which he had accumulated with reference to the ownership of such properties, to give the county the benefit of his researches in such matters, to give testimony in statutory inquisitions called for the purpose of bringing to light such "omitted properties" and give aid in "confronting and proving" the delinquencies of tax evaders, and to give other information relative to taxation of such properties as between Kansas and other states, and other such incidental help of similar nature in furtherance of the general purpose of the contract. In return for this service on the part of Mayer the county commissioners agreed to compensate him upon either of two bases, designated as "option A" and "option B." Without reciting in detail the provisions of the contract it may be said that the essential terms were that under "option A" Mayer was to be paid $100 a day, ex-

clusive of Sundays and holidays, for the time which he spent "in the business of acquiring and furnishing information" to be used by the county commissioners, and that this per diem payment was to be inclusive and not to apply to individual tax accounts concerning which he might furnish information, and that this payment was to be made out of funds that might be collected as a result of information furnished by him. If the county commissioners did not desire to make payment under "option A" they might do so under "option B," which provided for payment to Mayer of 25 percent of all moneys collected as a direct result of the information furnished by him.

In our opinion the case is controlled by the case of *State v. Dickinson County*, 77 Kan. 540, 95 Pac. 392, in which a contract substantially similar to the one in the instant case was considered and held to be *ultra vires* and void. Appellants seek to distinguish the instant contract from the one invalidated in the Dickinson county case on the theory that this contract does not call for collection of taxes by the person employed under the contract but only for the furnishing of information to be used by the county officials in the collection of taxes. An examination, however, of the Dickinson county contract does not support the distinction. In that case, as in this one, tax collections were to be made by the regularly constituted taxing officers in the regular way and Moir & Co., with whom the contract was made, proposed simply to assist the proper officers of the county in discovering taxable property subject to taxation in the county which had not been listed and assessed as required by law, and they were to receive 25 percent of the taxes which might be paid into the county treasury as a result of the discoveries made through their investigations. In that case the court said:

"The statute relating to taxation prescribes a complete and entire system of listing, valuing and taxing all real and personal property, and also prescribes a procedure for discovering and listing property for taxation which has escaped the surveillance of the assessors, and assigns the several steps in the system and procedure to designated officers of the townships and counties of the state. It imposes upon certain officers the very duties which, by the contract in question, the county commissioners undertook to employ Moir to perform. (Gen. Stat. 1901, §§ 7585-7607.) It was beyond the power of the board of county commissioners to employ any other agency to perform these duties, and the contract is therefore *ultra vires* and void." (p. 542.)

In support of that conclusion numerous cases are therein cited which need not be recited here.

In the Dickinson county case the offer submitted and accepted by

the county commissioners provided: "We propose to assist the proper officers of your county to discover taxable property subject to taxation in your county that has not been listed and assessed as required by law." It may be suggested that under that language the person employed was to work solely in Dickinson county, while in the instant case services were to be rendered not only within the county but outside the county and outside the state. If this difference between the two contracts is to be given any weight at all it would militate against rather than support the validity of the instant contract. If the commissioners are without authority under Kansas statutes to enter into such a contract covering services within their own county, certainly they would be without power to make such a contract covering services outside the county. In any event this difference in the two contracts furnishes no basis for supporting the contract before us.

It is well settled that counties have only such power as is conferred upon them by statute. (*Osborne County v. City of Osborne,* 104 Kan. 671, 673, 180 Pac. 233; *Shoner v. Jefferson County,* 94 Kan. 220, 223, 146 Pac. 419; *Brown v. State,* 73 Kan. 69, 84 Pac. 549; *Tarr v. Haughey,* 5 Kan. 625, 634.)

Appellants rely largely upon the provisions of G. S. 1935, 79-1432, in support of their authority to enter into the contract. We think it is readily apparent that the purpose of that statute is to compel the attendance and to elicit the testimony of persons in cases where there is reason to believe that false statements have been made with reference to property listed for taxation. It provides compulsory process and plainly does not confer power to employ persons to act in the capacity commonly referred to as a "tax ferret."

Cases in other jurisdictions dealing with such contracts have been examined and disclose a marked divergence of opinion. It may be said, however, that in most of the cases where such contracts have been upheld the decision has rested upon the provisions of the state statute giving power, either expressly or by implication, to make such contracts.

Among the cases holding such a contract void may be cited *Stevens v. Henry County,* 218 Ill. 468, 75 N. E. 1024, and *Decatur County v. Roberts,* 159 Ga. 528, 126 S. E. 460. In the former case the whole question is fully discussed and the same reasoning followed as in the Dickinson county case.

Whether it is desirable and advisable to secure such outside serv-

ices in the collection of taxes, as that contemplated by the contract here considered, is a question not before this court for decision. Much may be said in support of the contention that such services are needed to help prevent widespread evasions of our tax laws, but whatever the arguments for or against the proposition it is a matter of public policy for determination by the legislature. Since the Dickinson county case was decided by this court more than thirty years ago the matter has been more than once brought to the attention of the legislature, but no action has been taken empowering counties to enter into such contracts. We find no grounds for reversing that which has become the established law in this state.

In view of what has been said other contentions made in the case need not be considered.

The judgment is affirmed.