No. 68,917

DILLON STORES, A Division of Dillon Companies, Inc., and W. H. BRAUM, INC., an Oklahoma Corporation, *Appellees,* v. ELYSA K. LOVELADY, HARVEY COUNTY APPRAISER, and CRAIG D. COX, HARVEY COUNTY COUNSELOR, *Appellants*.

(855 P.2d 487)

Opinion

filed June 16, 1993.

*Thomas R. Docking,* of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, argued the cause, and *Gerald N. Capps,* of the same firm, was with him on the briefs for appellant.

*Robert J. O'Connor,* of Morrison & Hecker, of Wichita, argued the cause, and *Pamela Clancy,* of the same firm, was with him on the briefs for appellee.

The opinion of the court was delivered by

Six, J.: This case, before us on summary judgment, examines the authority of a county to hire a private accounting firm to assist the county appraiser in the analysis of reported amounts of tangible personal property.

Dillon Stores and W. H. Braum, Inc., (taxpayers) sought to enjoin enforcement of certain subpoenas duces tecum issued by Harvey County. The action also was to determine the validity of a contract between the County and Allen, Gibbs, & Houlik (AGH), a private accounting firm.

Taxpayers claim an illegal "tax ferret" contract had been entered into between AGH and Harvey County; consequently, the subpoenas duces tecum were unlawful and void. The trial court entered summary judgment for taxpayers, ruling that (1) the contract was void because the County did not have authority to contract, and (2) the subpoenas duces tecum, which were based on the contract, were also void.

Defendants Elysa K. Lovelady, the county appraiser, and Craig D. Cox, the county counselor, (the County) have appealed. Our jurisdiction is under K.S.A. 20-3018(c) (transfer from the Court of Appeals).

When summary judgment is challenged on appeal, we must read the record in the light most favorable to the party who defended against the motion for summary judgment. *Bright v. Cargill, Inc.,* 251 Kan. 387, 392, 837 P.2d 348 (1992).

In the case at bar, our standard of review, the legal scale we use in weighing the sufficiency of taxpayers' claim, is unlimited. We are reviewing statutory construction, which presents a conclusion of law. See *U.S.D. No. 352 v. Nea-Goodland,* 246 Kan. 137, 140, 785 P.2d 993 (1990). We find that Harvey County had authority to contract and to issue the subpoenas; consequently, we reverse the trial court.

## Facts

According to Harvey County, AGH met with the county administrator to discuss the general concepts of personal property tax compliance reviews. The administrator expressed interest in the project based on his belief that compliance in the county was inadequate. The administrator told AGH he would discuss the project with the county appraiser.

AGH prepared an engagement letter regarding the compliance audit. AGH and the County agreed that AGH's role was limited to assisting the County in: (1) identifying taxpayers with a high probability of omitted or undervalued property; (2) obtaining the appropriate books and records to review; and (3) preparing an accounting of the personal property from the taxpayer's records for the county appraiser. According to Harvey County, the goal was to have the assistance of an unbiased, objective expert in generating the personal property list.

The County asserted that the contract stated a fee for Phase I of $3,500. AGH's compensation for Phase II was based on an hourly rate (time involved) and the value of services as determined by AGH's billing rate. The contract also contained a provision which stated that AGH's Phase II fee could not exceed 35% of the additional tax and fees as determined and assessed by the county appraiser. The 35% figure was included, according to Harvey County, as a cap on AGH's professional fees, and it was understood that the cap would be applied to the entire project. Based on an initial review, AGH determined that 18 taxpayers appeared to be good candidates for the compliance review process.

The list of taxpayers was examined to determine from which taxpayers AGH and the County needed to request additional information and what type of documents would be needed in order to determine compliance. AGH indicated that the taxpayers' federal income tax returns, financial statements, and books and records were the appropriate documents.

### Authority to Hire a Private Accounting Firm
### to Assist the County Appraiser

Harvey County asserts that the trial court erred in its application of the Kansas Home Rule Powers Act. According to the

county, the Home Rule Act (K.S.A. 19-101 *et seq.*) extends a wide variety of powers to counties. The County emphasizes that "K.S.A. 19-101 *fourth* grants each county the power to make all contracts in relation to the property and concerns of the county necessary to the exercise of its corporate or administrative powers."

County appraisers are permitted to hire outside agencies to assist in the assessment of properties located within the county:

"With the consent and approval of the board of county commissioners or district board, [the county appraiser] may appoint such specialized help as he may need to properly assess specific properties and may pay them such compensation as the board of county commissioners or district board shall provide." K.S.A. 19-425.

Consequently, the County believes its actions were consistent with K.S.A. 19-425. We agree.

The County explains that it contracted with AGH for the sole purpose of receiving the firm's assistance in discovering tangible personal property that was subject to personal property taxation. The County reasons that it needed the assistance of experts because the methods and means of avoiding liability are often complex and beyond the expertise of most county appraisers.

Taxpayers advance the view that K.S.A. 19-425 does not apply because it is a statute of limited application. They reason that the trial court correctly found that K.S.A. 19-425 merely allows the county appraiser to hire specialized help to properly assess specific properties which are out of the ordinary and which require specialized expertise. Taxpayers suggest, without citation of authority, examples of such specialized property are rare art, gems, and items found at a nuclear power plant. We do not agree with taxpayers' restrictive interpretation of K.S.A. 19-425.

The trial court and taxpayers rely on two of our early decisions, *State, ex rel., Eubanks v. Sedgwick County Comm'rs*, 150 Kan. 143, 91 P.2d 2 (1939), and *State, ex rel. Coleman v. Dickinson County*, 77 Kan. 540, 95 Pac. 392 (1908). *Eubanks* and *Coleman* are of historical interest.

In *Coleman*, Dickinson County accepted a solicitation from a company to assist county officers in discovering taxable property that had not been listed or assessed. The company received 25% of the taxes paid as a result of its help. The Attorney General

sued to enjoin the contract. Finding no statutory authority that would permit the county to so contract, we found the contract to be void. 77 Kan. at 543. We recognized that the contract grew out of a legitimate problem relating to escaped and underreported property. We noted that the contract would have been valid if the county had been given the power to enter into such a contract. 77 Kan. at 542.

Similarly, in *Eubanks,* the Attorney General sued to enjoin a contract between the county and a private individual for the discovery of property that had not been voluntarily reported for tax purposes. We relied on *Coleman* in finding the *Eubanks* contract void for want of authority. 150 Kan. at 145, 147. We concluded that the determination of the necessity of such contracts was for the legislature. 150 Kan. at 147. K.S.A. 19-425, which was enacted in 1968 (L. 1968, ch. 206 § 5), empowers counties to hire experts to assist in the proper assessment of personal property. The legislature has spoken.

According to taxpayers, home rule does not apply to the case at bar because the State has preempted the property tax area. Taxpayers assert that the State, through constitutional and legislative acts, has reserved exclusive jurisdiction to regulate all property tax matters. Therefore, taxpayers believe the contract at issue is beyond the County's home rule power by reason of state preemption.

The concept of home rule is briefed and argued extensively by the parties. Harvey County advances home rule as authority for the contract's validity. Taxpayers emphasize that home rule does not apply. We reviewed the history of Kansas home rule in *Missouri Pacific Railroad v. Board of Greeley County Comm'rs,* 231 Kan. 225, 226, 643 P.2d 188 (1982).

K.S.A. 19-101 *fourth,* in combination with K.S.A. 19-101c, provides counties with discretion to enter into contracts which assist in administration. The approach taken by the 1974 home rule amendments is clearly contrary to the "need a statute" view in *Coleman* and *Eubanks*. The question is whether some provision in K.S.A. 1992 Supp. 19-101a(a) limits Harvey County's authority. See *State ex rel. Stephan v. Board of Sedgwick County Comm'rs,* 244 Kan. 536, 540-41, 770 P.2d 455 (1989). Taxpayers believe

that 19-101a(a)(1) institutes such a limitation because taxation is governed ultimately by the legislature.

In *Blevins v. Hiebert*, 247 Kan. 1, 6, 795 P.2d 325 (1990), we quoted *Claflin v. Walsh*, 212 Kan. 1, 7-8, 509 P.2d 1130 (1973):

" '[I]n determining whether a legislative enactment is applicable uniformly to all cities such a legislative intent should be clearly evident . . . . Even before the passage of the home rule amendment we held that legislative intent to reserve exclusive jurisdiction to the state to *regulate* must be manifested clearly by statute before it can be held that the state has withdrawn from [the] cities power to regulate in the premises.' *Claflin v. Walsh*, 212 Kan. at 7-8 (emphasis added)."

As Harvey County explains, examining potential conflicts between state and local law is a way of determining whether state law uniformly preempts an action by a county.

The legislature has not expressly prohibited counties from receiving assistance from accounting firms concerning underreported personal property. Taxpayers claim taxation must be uniform. In the case at bar, the application of taxation rates is uniform. The only differences lie in enforcement, an area which would be historically nonuniform. Additionally, several tax cases illustrate the fact that uniformity is not the pre-eminent goal of the legislature. See *Cogswell v. Sherman County*, 238 Kan. 438, Syl. ¶ 3, 710 P.2d 1331 (1985) ("Article 11, § 1 of the Kansas Constitution, providing for uniform and equal rates of assessment, does not require that the levy and amount raised by the tax be the same in each taxing district. The constitution only requires a uniform and equal rate throughout the territory in which the tax is levied. The principle of equality is fully satisfied by making local taxation equal and uniform as to all property within the limits of the taxing district."); *Executive Aircraft Consulting, Inc. v. City of Newton*, 252 Kan. 421, Syl. ¶ 1, 845 P.2d 57 (1993) ("Home rule empowers a city or county to levy any type of exaction unless the legislature preempts the field by uniform enactment.").

Taxpayers contend that under K.S.A. 1992 Supp. 79-1427a and K.S.A. 79-1461, the county appraiser has the sole and exclusive duty to investigate, list, and appraise escaped or underreported taxable property.

The literal reading of K.S.A. 1992 Supp. 79-1427a advocated by taxpayers is strained. The claim that only the county appraiser has the authority to deal with escaped property, taken to its extreme, would mean that no assistance could be provided by other support staff.

We need not embark on an extensive analysis of the application of home rule to the case at bar. K.S.A. 19-425 is a specific authorization statute. The contract was not, as the trial court found, ultra vires.

### Public Policy—Contingent Fee Agreement

Taxpayers, relying on *Coleman* and *Eubanks*, assert a contingent fee feature in the contract is a further ground of illegality. The trial court agreed.

The County insists that its contract with AGH was not a contingent fee agreement. The County contends that the plain meaning of contingent undermines the trial court's reasoning. The County also emphasizes that even if the contract was a contingent fee agreement, such contracts are not prohibited in Kansas. For example, in *Edwards County Comm'rs v. Simmons*, 159 Kan. 41, 151 P.2d 960 (1944), we approved a contingent fee contract in which the county retained an attorney to collect delinquent taxes.

Harvey County also indicates that other Kansas statutes authorize contingent fee contracts between counties and third parties. The County cites K.S.A. 79-2018, which gives counties the authority to enter into contingent fee contracts to assist in the collection of unpaid personal property taxes. According to Harvey County, K.S.A. 79-2018 illustrates that in the realm of personal property taxation, contingent fee contracts are valid, enforceable, and further the interests of public policy.

Taxpayers believe that contingent fee "tax ferret" contracts are particularly invidious. Taxpayers note that in *Coleman*, we found the contingent fee contract to be void not only because it was beyond the power of the county commissioners, but also because it was against public policy. 77 Kan. at 545.

The examples of contingent fee contracts that have been authorized by the legislature and approved by this court suggest that such contracts do not inherently violate public policy. The "tax ferret" metaphor is not applicable to contemporary situations

under K.S.A. 19-425 where an accounting firm assists a county with record interpretation. Any inference to the contrary suggested by either *Eubanks,* 150 Kan. 143, or *Coleman,* 77 Kan. 540, is hereby disapproved.

## The Subpoenas Duces Tecum

The trial court reasoned that the subpoenas were void because the County's contract with AGH is void. Taxpayers argue that the specific contract between AGH and the County is replete with potential abuses and no safeguards exist against those abuses. According to taxpayers, under several provisions of the contract, a taxpayer can and must be selected for compliance review on a purely arbitrary and selective basis.

According to taxpayers, the validity of the contract should be judged from its four corners, not by the alleged subjective intention of the parties or according to insignificant distinctions of form. They contend that the contract must be evaluated based upon its practical and substantive effect.

The attack on the contract in the case at bar is atypical because the parties to the contract, Harvey County and AGH, are in agreement concerning the construction of the contract. Taxpayers, as third parties, are asserting the contrary interpretation.

Taxpayers emphasize that the documents requested in the subpoenas duces tecum were to be handed over to AGH for a review. Taxpayers argue that such a review is improper due to the nature of the contract. Taxpayers further reason that the subpoenas can also be viewed as unlawful and void because the county did not comply with K.S.A. 79-1461. (Taxpayers suggest that 79-1461 does not authorize the county appraiser to permit AGH to review the subpoenaed documents.)

Taxpayers assert that the appraiser was trying to improperly use her qualified subpoena power to obtain information for AGH. K.S.A. 79-1461 provides in part:

"The appraiser may request the county or district attorney or county counselor to subpoena and examine under oath any person or persons, records or documents that it is reasonable to believe would be useful in identifying and determining the value of the property located within the county."

Taxpayers argue that the plain language of the statute provides only for the county attorney, the district attorney, or the county counselor to examine taxpayers and their records. Taxpayers assert that no statutory language would allow either AGH or any other third party to review such documents. Consequently, taxpayers believe that the county appraiser cannot act under the guise of K.S.A. 79-1461 and cite *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 459, 691 P.2d 1303 (1984). Taxpayers state that applying *Kansas Krude* to the case at bar, Lovelady may not exercise her powers derived from the legislature to modify the legislative act which is being administered. 236 Kan. at 459.

*Kansas Krude* is misapplied by taxpayers. In *Kansas Krude*, the Board of Tax Appeals (BOTA) granted a crude oil excise tax exemption which was not granted by the legislature. We held that BOTA had no authority to do so. 236 Kan. at 459.

Under K.S.A. 79-1461, the county appraiser has the authority to request the issuance of subpoenas of records or documents needed to facilitate an investigation into property tax valuations.

Attached to the April 1992 subpoenas was a letter from the appraiser dated February 7, 1992, addressed to taxpayers. The letter referenced the compliance review being conducted by the appraiser's office. A request for specific records was contained in the letter. Reference was also made to AGH as assisting in the review. Taxpayers were instructed to send the requested records to AGH's Wichita office. Taxpayers chose not to comply with the appraiser's February 7, 1992, request. The subpoenas are not void. The subpoenas commanded delivery at the appraiser's office. The records requested were identified by attaching the February 7, 1992, letter which specifically listed the desired items.

AGH may properly assist the county; consequently, AGH may have access under the document supervision of one of the officials named in K.S.A. 79-1461 to the subpoenaed documents. The April 1992 subpoenas commanded appearance and delivery to the Harvey County appraiser's office, not at the offices of AGH. Any records or documents subpoenaed under K.S.A. 79-1461 must remain under the physical custody and control of one or more of the county officials listed in K.S.A. 79-1461.

Summary judgment for the taxpayers is reversed. The subpoenas are not defective. They command document delivery to the Harvey County Appraiser's Office.

ABBOTT, J., not participating.

TERRY L. BULLOCK, district judge, assigned.