The Honorable Alfred Ramirez State Senator, Fifth District State Capitol, Room 128-S Topeka, Kansas 66612
The Honorable Carolyn Tillotson State Senator, Third District State Capitol, Room 136-N Topeka, Kansas 66612
The Honorable Clyde D. Graeber State Representative, Forty-First District State Capitol, Room 115-S Topeka, Kansas 66612
The Honorable L. Candy Ruff State Representative, Fortieth District State Capitol, Room 115-E Topeka, Kansas 66612
The Honorable Kenny A. Wilk State Representative, Forty-Second District State Capitol, Room 174-W Topeka, Kansas 66612
Dear Senators Ramirez and Tillotson and Representatives Graeber, Ruff and Wilk:
You request our opinion regarding the propriety of a contract entered into between Leavenworth county and a private company pursuant to K.S.A.19-425 for the purpose of assisting the county appraiser in the assessment of personal property. You explain that while you are aware of the Kansas Supreme Court's recent decision captioned Dillon Stores v.Lovelady, 253 Kan. 274 (1993), you believe the case did not address certain concerns. We will discuss those additional perceived concerns in the order presented in your request letter.
In Dillon Stores v. Lovelady the Kansas Supreme Court held that counties are authorized by K.S.A. 19-425 to hire experts to assist in the proper assessment of personal property. 253 Kan. 274 at syl. para. 1 and 277-280. In laying a background for its decision, the Court acknowledged the county's assertion that the contract in question contained a cap on the amount of the fees labeled by plaintiffs as contingency fees.253 Kan. at 276. The court did not make any finding with regard to this but simply stated:
 "The examples of contingent fee contracts that have been authorized by the legislature and approved by this court suggest that such contracts do not inherently violate public policy. The `tax ferret' metaphor is not applicable to contemporary situations under K.S.A. 19-425 where an accounting firm assists a county with record interpretation. Any inference to the contrary suggested by either Eubanks, 150 Kan. 143, or Coleman, 77 Kan. 540, is hereby disapproved."
You question whether the absence of a stated cap on contingency fees would alter this conclusion of the Court. The Court's analysis does not distinguish between contracts with a cap on fees and those with no cap. Thus, in our opinion, the distinction is one without a difference and the fact that there is no cap on the fee does not make the contract void as against public policy. See also State, ex rel. Coleman v. DickinsonCounty, 77 Kan. 540, 542 (1908); Dillon Stores, 253 at 278 (court noted the contract in Dickinson [with no cap] would have been valid if it had been statutorily authorized).
You next inquire whether the county can "bargain away or unilaterally contract away a portion of taxes which would be properly paid to other taxing subdivisions in the county." The contract in question is between the county and the private company. Cities, school districts, townships and other taxing subdivisions within the county are not parties to the agreement. The contract calls for the county to pay fees equal to 10% of audit revenue collections and states that "[t]hese percentage fees include applicable county, school, city, and all other taxes including penalties but not to include interest." This fee is payable by the county after revenues produced by the audit are actually collected and any taxpayer appeal or protest is completed. Agreement for Audit Services between the Leavenworth County Commission and Atlantic Resources Inc., dated October 7, 1993. The contract does not specify, and we make no judgment as to whether the taxing subdivisions' tax receipts will be prorated or whether the county will be responsible for paying the entire amount out of the county's portion of the revenues generated by the contract. We assume, for purposes of responding to your query, that the county intends to prorate.
Pursuant to K.S.A. 79-1411a, the county is charged with primary responsibility for the administration of all laws relating to assessment, review, equalization, extension and collection of personal property taxes, except as otherwise provided. See Cities Service Oil Co.v. Board of County Commissioners, 224 Kan. 183 (1978). Further, K.S.A.19-101 fourth and K.S.A. 19-101c authorize counties to enter into contracts which assist in administration of county affairs except as limited by K.S.A. 1993 Supp. 19-101a. We find nothing that precludes the county from entering the subject agreement. In fact, at least two separate statutes specifically authorize counties to apply tax revenues to the costs of collection before prorating the remainder to interested taxing subdivisions. See K.S.A. 79-2018, 79-2805. It seems reasonable in the situation presented for the county to spread the costs of its collection efforts taken on behalf of taxing subdivisions, and we believe K.S.A. 79-1411a together with Dillon Stores v. Lovelady authorize agreements to do so without the express consent of those taxing subdivisions. But for the county's agreement, the subject taxes would likely not be collected at all.
Next you question the authority of counties to request copies of a business' income tax returns for purposes of detecting property subject to assessment and determining its value. You suggest there may be violations of privacy in requiring such disclosure. K.S.A. 79-1461
provides in part:
 "The appraiser may request the county or district attorney or county counselor to subpoena and examine under oath any person or persons, records or documents that it is reasonable to believe would be useful in identifying and determining the value of the property located within the county."
According to the Court's statement of facts in Dillon Stores v.Lovelady, the county being challenged in that case was also requesting federal income tax returns. 253 Kan. at 276. This and other requested information was to be reviewed by the private company on behalf of the county. The Court found that the county had the authority "to request the issuance of subpoenas of records and documents needed to facilitate an investigation into property tax valuations," and held that the subpoenas issued in that case were valid, regardless of the fact that a private company acting on behalf of the county would have access to the records, as long as the records remained under the physical custody and control of one or more county officials. 253 Kan. at 282. Thus, in our opinion, the county may request businesses to provide income tax returns, and may request issuance of subpoenas for tax returns, if the county reasonably believes such information is needed to facilitate the county's investigation into property tax valuations. Whether particular tax return documents would be useful in particular situations is a question of fact that we cannot determine within the confines of an opinion.
You inquire whether a county must show probable cause to believe property is being omitted or undervalued before it may issue subpoenas. You point out that in Dillon Stores v. Lovelady only 18 taxpayers were targeted for the compliance review process, whereas it is your understanding that in Leavenworth county all businesses will be audited. In Dillon Stores v. Lovelady the county was criticized for selecting only a few business taxpayers for audit, the argument being that this was discriminatory and violated the uniformity provisions of the Kansas constitution (art. 11, sec. 1). Here the county's action is questioned on the basis that it is attempting to include all business taxpayers in its audit program, without particularized suspicions.
With regard to your specific question, K.S.A. 79-1461 does not require probable cause to believe property has been omitted or underreported; K.S.A. 79-1461 requires only a reasonable belief that the information sought would be useful in identifying and determining the value of property. The stringent relevancy requirements of subpoenas in aid of criminal or civil litigation have been held not to apply to agency subpoenas. Yellow Freight System, Inc. v. Kansas Commission on CivilRights, 214 Kan. 120, 125 (1974). We believe subpoenas to assist with investigation into compliance with the tax statutes would be analogous to agency subpoenas, therefore the test of relevancy:
 "[r]equires only that the inquiry be one which the agency demanding production is authorized to make, that the demand be not too indefinite, and that the information sought be reasonably relevant." Id., quoting Brovelli v. Superior Court, 364 P.2d 462, 465
(Cal. 1961).
We believe this response and our previous discussion also address your question regarding the standard required to subpoena records and the types of records that may be the subject of a subpoena.
Finally, you advise that the county is assessing 100% penalties for each year of escaped property pursuant to K.S.A. 1993 Supp. 79-1427a. You question whether the county has the authority to forgive all or a portion of the penalty. We have previously opined that counties lack authority to abate or refund penalties that were assessed pursuant to statutory requirement. Attorney General Opinion No. 81-42; VII Opinions of the Attorney General 1114. See also Walkemeyer v. Stevens County Oil Gas Co., 205 Kan. 486, 490 (1970); In re Tax Protest of Rice,228 Kan. 600, 602 (1980). K.S.A. 79-1427a requires assessment of a penalty when personal property is found to have escaped taxation. The statute is part of a uniform enactment. There is no discretion and therefore the penalty cannot be forgiven by the county in circumstances covered by the statute. The board of tax appeals, however, does have the authority to abate such penalties in certain circumstances. K.S.A. 1993 Supp. 79-1427a(b).
In conclusion, counties are authorized under K.S.A. 19-425 to hire experts to assist in the proper assessment of personal property. Contracts for such purposes are not void as against public policy even if there is no stated cap on the amount of contingency fees to be paid for such services. A county may agree to base the fee for such services on the amount of tax revenues collected without the acquiescence of other taxing subdivisions interested in the taxes. A county may request issuance of subpoenas of records or documents reasonably believed to be useful in identifying and determining the value of property located within the county. A county has no authority, however, to forgive the penalties imposed pursuant to K.S.A. 1993 Supp. 79-1427a.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm