BEN SANDERSON, Appellee, v. BOARD OF SCHOOL DIRECTORS OF LINCOLN TOWNSHIP et al., Appellants.

No. 40528.

JANUARY 13, 1931.

*T. H. Goheen* and *E. R. Acres*, for appellants.

*C. N. Houck* and *E. J. Hook*, for appellee.

MORLING, J.—The electors of the school township involved in this suit, at their regular meeting in March, 1927, voted a schoolhouse tax for the election of a new schoolhouse in Subdistrict Number 1. No site was specified. The existing schoolhouse was on the southeast corner of the southeast quarter of the southwest quarter of Section 16. At the regular meeting of the board on July 1, 1927, a petition to relocate the site on the southeast corner of the southeast quarter of the southeast quarter of Section 16

was presented. The petition recited that James R. Soukop was willing to donate one-half acre of land for the new site. It was signed by Soukop and wife and others. The record of the meeting is quite informal. It recites: ''There was a petition to locate the new schoolhouse Number 1 one-half miles east, to the southeast quarter of the southeast quarter of Section 16. Four votes for the new site and three against it.'' At a meeting of the board held April 18, 1928, the following proceedings were had:

''Motion by Ernest Hannaman that we rescind the action of the old board of the 1st day of July, 1928 [1927?] meeting, and seconded by Henry Anderson, to change the schoolhouse site from the new site back to the old site. Five votes for the old site and two votes against. Motion to elect a building committee. Louy Rue, John G. Kirschman, Clarence Sanderson was duly elected.''

At this meeting Edward Espeseth asked to be set over from District 5 to District Number 1. The minutes recite: ''But as he had no petition, the board didn't take no action.'' Under date of April 27, 1928, 14 persons, residents and taxpayers of Subdistrict Number 1, not including Espeseth, gave notice of appeal to the county superintendent from the action of the board of April 18, 1928, in changing back the site. The affidavit for appeal attached to the notice was by Espeseth. The notice and affidavit were delivered to the county superintendent, who mailed the secretary of the school township notice dated April 20, 1928, that an appeal had been made to her ''concerning the changing of site of school April 18, 1928, from site as voted upon July 1, 1927. Please send me within ten days a complete certified transcript of the record and proceedings relating to the decision appealed from.'' On the date of writing the letter, the president of the board of directors was in the office of the county superintendent, and was verbally notified by her of the appeal and of the date of hearing, May 14th. He was told by her that she was writing him a letter, ''and asked him if it was necessary to mail it to him, and he said 'no;' and I said, 'What about the other members of the board?' and he said he would notify them.'' At the hearing May 14th, all members of the board of directors appeared, with their attorney, and filed a motion to dismiss the appeal, on grounds that will be considered later. The county

superintendent took evidence, apparently that offered principally, if not wholly, by the board of directors. The county superintendent made elaborate findings, sustaining the appeal, and ordering:

"That the action of the board of April 18, 1928, in changing the said schoolhouse site from the S. E. corner of the S. E. ¼ of the S. E. ¼ of Section 16, Township 98 north, Range 10 west of the 5th P. M., to the S. E. corner of the S. E. ¼ of the S. W. ¼ of said section, be and the same is hereby rescinded, annulled, and set aside; and the schoolhouse site as fixed by said board at its meeting in July, 1927, is hereby affirmed, and the location of said schoolhouse at the S. E. corner of the S. E. ¼ of the S. E. ¼ of Section 16 is hereby established and fixed. Motion to dismiss. Appeal overruled."

Pursuant to resolution at meeting of the board on June 8, 1928, the board took appeal to the superintendent of public instruction, who, on August 14, 1928, affirmed the decision of the county superintendent. On March 17, 1928, Soukop and wife, the owners of the proposed new site, executed and gave to the secretary a deed to the school board for one-half acre in the southeast corner of the southeast quarter of the southeast quarter of Section 16 for schoolhouse site, to revert when no longer used as such. On June 24, 1929, petition in this action was filed.

I. Defendants concede in argument that, "if the county superintendent and the state superintendent, having acquired jurisdiction, pass upon a question of facts within their discretion,  their decision is final." Defendants urge that, because Espeseth, who made the affidavit for appeal to the county superintendent, did not live in the subdistrict, he was not aggrieved, and could not appeal to the county superintendent. Section 4298, Code, 1927, provides:

"Any person aggrieved by any decision or order of the board of directors of any school corporation in a matter of law or fact may * * * appeal therefrom to the county superintendent of the proper county; the basis of the proceedings shall be an affidavit filed with the county superintendent by the party aggrieved within the time for taking the appeal, * * *"

The appeal was taken by 14 residents of the subdistrict.

Though the affidavit was not made by any of them, they adopted the affidavit and filed it. The statute does not say that the affidavit shall be made by the appellant, but that "the basis of the proceedings shall be an affidavit filed * * * by the party aggrieved * * *" Espeseth was a resident and taxpayer of the school district, and, we infer, a taxpayer in Subdistrict Number 1. It seems that, when he built a new residence, instead of building it in Subdistrict Number 1, where his then residence was, he changed the location to a point in Subdistrict Number 5. However, he had continued to send his children to the school in Subdistrict Number 1. We are of the opinion that the affidavit was filed by the party aggrieved, within the meaning of the statute, and further, that Espeseth was aggrieved.

II. Defendants contend that the county superintendent did not acquire jurisdiction because a complete certified transcript of the records relating to the decision appealed from was not filed; that the county superintendent did not notify the persons adversely interested, as required by Section 4299, which provides:

"The county superintendent shall, within five days after the filing of such affidavit in his office, notify the secretary of the proper school corporation in writing of the taking of such appeal, who shall, within ten days after being thus notified, file in the office of the county superintendent a complete certified transcript of the record and proceedings relating to the decision appealed from. Thereupon, the county superintendent shall notify in writing all persons adversely interested of the time when and place where the matter of appeal will be heard by him."

The evidence shows that the secretary was notified by letter; that the board of directors were orally notified; that the directors appeared and were heard. While the county superintendent stated in the course of the trial that the transcript was not filed with her, it appears that she overlooked it. It is satisfactorily shown by her later statements and from the facts in the record that the transcript was filed with her. The secretary was notified and the board of directors were notified. They appeared. The basis of the appeal is the affidavit. Thereby the county superintendent obtained jurisdiction. The purpose of

the requirement of notice is to give the parties adversely interested opportunity to be heard. They were given that notice, and took advantage of it by appearing and participating in the trial. Notice was not jurisdictional. See *Durand v. Northwestern Life & Sav. Co.*, 112 Iowa 296. Defendants were not prejudiced by the mere informality of the notices. They had accepted and enjoyed all the benefits that they would have had if the statute had been strictly complied with. The county superintendent was fully informed of the record, had it before her, and reviewed it.

III. Defendants contend that there was no resolution of the board locating a new site; that, until the board, by proper resolution, locates a new site by metes and bounds, their proceedings are so indefinite and uncertain as to be void; that the board never established a schoolhouse site, and the resolution of rescission was meaningless. The minutes of the proceedings of the board of directors, as is not unusual, are quite informal. This is not fatal. *Kinney v. Howard,* 133 Iowa 94. We find no statute providing for a record of the proceedings of the board, or what it shall contain. A record, of course, should be kept, and one was kept. There can be no doubt from this record that the board of directors understood, at their meeting on July 1, 1927, that they were petitioned to locate the new schoolhouse one-half mile east of the then location, and on the southeast corner of the southeast quarter of the southeast quarter of Section 16, and that the owners were willing, and were then by their written petition offering, to donate. There can be no doubt that they voted upon this proposition, and that the majority favored it. There can be no doubt that the board understood and intended that the proposition had carried. It was not necessary that they have at the time a conveyance of the new site. The owner and other petitioners might want to know, before going to the trouble of making and tendering a formal conveyance, whether the proposition would be accepted. It is not debatable, on this record, that the board, when they met April 18, 1928, understood and assumed that the board had previously changed the site; for they then took action to rescind, and "to change the schoolhouse site from the new site back to the old site. Five votes for and two votes against." They understood

that they had previously acted, and had changed the site. They rescinded that action. The board by their proceedings April 18, 1928, made a decision. Appeal was taken from such decision by persons aggrieved. The county superintendent made her decision on the appeal, reversing the board, and locating the schoolhouse at the southeast corner of the southeast quarter of the southeast quarter of Section 16. Defendants appealed to the superintendent of public instruction, who affirmed the decision of the county superintendent. There can, on this record, be no doubt of the jurisdiction.

IV. It is claimed that the decision of the county superintendent was meaningless; "that she did not establish a site,— she fixed the location of the schoolhouse at a point, the S. E. corner of said Section 16, which is nothing but  an angle in a straight line and in the middle of a four-rod road;" that, for the same reason, the state superintendent, in affirming her decision, did not fix any site. It is beyond dispute that the board of directors, the county superintendent, and the state superintendent were acting on a proposal to change the site and to erect the schoolhouse one-half mile east of the then location, and on the southeast corner of the southeast quarter of the southeast quarter of Section 16. The board made no objection on account of any alleged indefiniteness. They were not misled. They knew that they were offered a half acre in the southeast corner of the quarter section. They did not question this offer or its sufficiency in description or otherwise. Deed has been delivered. While the deed describes the conveyed premises as "one-half acre in the southeast corner of the southeast quarter * * *," it says that said grounds are deeded for schoolhouse site, and covenants that the grantors "are lawfully seized of said premises; that they are free from all encumbrance, that we have good right and lawful authority to sell and convey the same, and we do hereby covenant to warrant and defend the said premises against the lawful claims of all persons whomsoever." Clearly, it was agreed that the owners were conveying a site for schoolhouse, one which they had the right to convey, and which was free from encumbrance, and the title to which they warranted. Neither the owners nor the directors ever understood that the directors were required to locate the school in the public road, or that the land occupied by

the public road was to be deducted from the grant. While technically the grantors owned the fee to the land occupied by the highway, clearly they did not intend to convey the reversion in the highway. The highway was necessary, to make the school site available. Neither the grantors nor the grantees ever had any doubt, or raised any question, as to just what was intended. There is, on this record, no merit in the contention of uncertainty either in the action of the board of directors or in the decree appealed from.

V. The decree here appealed from directs the "defendants to proceed, with reasonable dispatch, to construct a new school building upon the location fixed by the board of directors of said school township at its meeting July 1, 1927, as affirmed * * * in the southeast corner of the southeast quarter of the southeast quarter of Section 16 * * * and to procure, by gift, conveyance, condemnation, or otherwise, as provided by law, sufficient land for the purpose of said schoolhouse site, not less than one-half acre, nor more than two acres, exclusive of the public highways." Defendants argue that the district court had no jurisdiction to order the board to select the schoolhouse site. The site had been selected and conveyed, and there is no prejudice in this respect.

VI. The abstract and amended abstract are unnecessarily prolix and full of repetitions. They have required much useless labor, and taken unnecessary time in their examination. While it may make no material difference in this case, we think that no costs should be allowed to either party for printing abstract or amendments.—*Affirmed.*

. FAVILLE, C. J., and EVANS, STEVENS, DE GRAFF, ALBERT, KINDIG, and WAGNER, JJ., concur.