DOROTHY SCHRADER, Appellant, v. CAMERON TOWNSHIP SCHOOL DISTRICT, Appellee.

No. 43223.

APRIL 7, 1936.

Graham & Graham, and G. C. Dalton, for appellant.

Chas. S. White and Clark D. Mantz, for appellee.

ALBERT, J. —On the 28th of July, 1933, a written contract was made between the plaintiff and the defendant, by which the plaintiff was to teach defendant's school for eight and one-half months at $40 per month. She entered on the performance of her duties under this contract, and taught until the 19th of October, 1933. On the 21st of October, 1933, the president of the school board served the following notice on the plaintiff:

"You are hereby notified that the board of directors of said township, Audubon county, Iowa, met at the Center school, October 19, 1933, at 7 p. m. and there investigated and examined into a petition signed by the patrons of said district, No. 6. And on due consideration, decided by unanimous vote to dismiss Miss Dorothy Schrader said teacher of district No. 6, dismissal to take effect at 4:00 p. m. October 20, 1933."

On the 25th of May, 1934, plaintiff brought this action to recover three weeks' salary that had been earned by her before this notice was served on her; and alleged that the defendant had breached the contract, and asked to recover the balance due under the contract, of $300. Defendant by way of answer alleges that complaints came to the officers of the defendant of the shortcomings and lack of faithful performance of the duties of the plaintiff as a teacher, and that a meeting was called, as required by law, of the school board, to which plaintiff was invited to be present, and that plaintiff was given notice of said meeting; that there was a hearing at which plaintiff was present, and after hearing both sides the defendant board dismissed the plaintiff as teacher. Defendant admits that the teacher taught for fourteen days before she was dismissed and for which she has not been paid, and alleges she failed to file a term report with the secretary and that she failed to take an appeal from the decision of the board of directors to the county superintendent.

Plaintiff, as a witness, admits the receipt of the notice of her discharge. She says that she was unable thereafter to get any school to teach; that she used her best efforts to comply with the contract and to control the children who came to school. "The oldest was twelve years of age. Some of them did not mind very well. The children would get up and go out without asking. I went out and tried to get them to come in. At one time some of the children built a fire in the school yard, contrary to my wishes, and I tried to get them to desist. If they built any other fire I was not present. It was not during the school period. No patron of the district made any complaint to me about the fire. My father and I went to the president of the school board and asked his aid in making these children behave. This was three or four weeks before Mr. Miller told me that I could not teach any more. I went up to his house twice. The only children who caused any trouble were the Zaiger children. I had no trouble with the rest of them. The father of the Zaiger children was a director of the school board. I asked him to cooperate with me in controlling these children. I did not get any cooperation from him. The Zaiger children were five in number, ranging in age from twelve down to five. I was not served with any notice of complaint on charges being filed against me or pending before the board. The first time I was aware that the school board did not want me to teach any longer was when Mr. Miller came over and told me. At that time he left a copy of Exhibit A. Mr. Miller told me they were going to have a board meeting and that I could be present. My father and mother and I went over. The school board were all present. They did not tell me at the meeting that any complaints had been filed against me, and I did not know that any complaint was ever made against my teaching. I understood we were there to discuss the conduct of the Zaiger children. That was the only purpose. Mr. Miller asked me to make a statement and I told the board about the bad behavior of the Zaiger children. I did not tell them that I could not make them mind. While I was attempting to dress the wound of a student who slipped on the porch and skinned her arm, one of the Zaiger children picked up a pair of scissors lying on my desk and threw them at me, and when I attempted to correct him all the other Zaiger children came to resist. At the meeting Mr. Anderson read Exhibit B to me, which is as follows:

" 'Miss Schrader is not giving satisfaction. She don't keep no government on the children while at school.' " (Signed by twelve of the patrons of the school.)

Ai Miller, president of the board, testifies:

"I had a talk with Miss Schrader some time after she commenced teaching, some five or six weeks after. She came over to my place and told me she could not handle the Zaiger children. They caused a lot of trouble. She did her best to control them, but it seemed like she could not manage them. About two days before the meeting I saw Miss Schrader and told her we were going to have a meeting of the board at a certain time and would like to have her there to state her case. I told her, 'I am going by the director's home and notify him of the meeting.' I told her there was a petition out and I had several complaints and it looked like it got to a place where I had to do something. We went ahead and held the meeting. I don't remember the date. All the school directors of Cameron township were there, and Miss Schrader and her father and mother. The secretary kept a record of the meeting."

Anderson, the secretary, testifies as to the meeting, and produces a record of the proceedings. This record was objected to on several grounds. He testifies that no notice of appeal to the county superintendent was served. "I was present on October 17, 1933. The plaintiff was there at the board meeting. At that meeting I read the paper marked Exhibit B. Miss Schrader was given an opportunity to speak to the board concerning the condition of the school in district No. 6. She made quite a talk; said that she couldn't handle the school children, they wouldn't mind her, and she couldn't watch them when they were outside and inside both. She said they broke her watch crystal, and threw marbles at her, and a pair of scissors. It was after that meeting that the record introduced was made. I know these Zaiger children raise a lot of trouble. My daughter taught the rest of the term of this school."

Ai Miller testifies with reference to the notice of the decision of the board: "I took the notice down to Miss Schrader and read it and gave her a copy. No notice of appeal to the county superintendent was served upon me as president of the board. She said some of the children would get up and go out, and

wouldn't mind her, and she could not handle a part of them. She did say that it was the Zaiger children who threw things at her, and she could not control them. When she tried to correct one of them all the Zaiger children would jump on her. She talked to me two or three times about that."

Stewart, another member of the board, was called as a witness. With reference to the teacher, he says: "She said that she could not control the children, they got beyond her control."

The county superintendent testifies that no notice of appeal was served on her.

The father of the plaintiff was present at the meeting. "Nothing was said of any charge of any kind or character against the teacher, or incompetency, or anything else. It was confined wholly to the question of what to do with the Zaiger children."

Dorothy Schrader further testifies:

"When Mr. Miller told me they were going to have a board meeting he said it was for the purpose of discussing the conduct of the Zaiger children. This was two or three days before the meeting. Up to the time I went to the meeting I did not know anybody had complained against me."

At the close of the testimony, the district court ruled that the case of Kirkpatrick v. Independent School District, 53 Iowa 585, 5 N. W. 750, was controlling. Thereupon the court directed a verdict in favor of the defendant.

**III** The first error complained of is that the plaintiff was discharged without notice of the time and place of the board meeting or of the accusation; and failure to give a reasonable time in which to prepare her defense. The plaintiff insists, therefore, that the action of the board in attempting to discharge her was a nullity.

Section 4237 of the Code of 1935 reads as follows:

"The board may, by a majority vote, discharge any teacher for incompetency, inattention to duty, partiality, or any good cause, after a full and fair investigation made at a meeting of the board held for that purpose, at which the teacher shall be permitted to be present and make defense, allowing him a reasonable time therefor."

It is first insisted that the plaintiff had no notice of the

time of the meeting. However, the record shows that all the members of the board were present, as well as the teacher, and the written complaint then before the board was read to her and in her presence, and she participated in the meeting. Hence, any want of notice or defect of notice is not material. Sanderson v. Board of School Directors, 211 Iowa 768, 234 N. W. 216.

■■■ It is next insisted that plaintiff cannot be heard in this cause because she did not appeal to the county superintendent, from her discharge by the board. It must be conceded that there is some apparent conflict in our cases on this question, but, so far as the matters involved in this case are concerned, the rule is settled in this state that, under section 4237 of the Code, the notice and opportunity to the teacher to appear and meet the charges against her is the fundamental dividing line in our cases. That is to say, that if the board fails to comply with the provisions contained in this section and discharges a teacher before the expiration of her contract, then such teacher has a right to maintain an action at law to recover for the breach of contract. See, among other cases, Park v. Independent School District, 65 Iowa 209, 21 N. W. 567; Burkhead v. Independent School District, 107 Iowa 29, 77 N. W. 491; Curttright v. Independent School District, 111 Iowa 20, 82 N. W. 444; Schultz v. Consolidated Independent School District, 200 Iowa 293, 204 N. W. 281; Smith v. School District Township of Grove, 216 Iowa 1047, 250 N. W. 126. On the other hand, it seems well settled that where the board has attempted to comply with the aforesaid section and the teacher appears and participates in the proceedings, and is then discharged by the board, she must appeal to the county superintendent. Benson v. District Township of Silver Lake, 100 Iowa 328, 69 N. W. 419; Burkhead v. Independent School District, 107 Iowa 29, 77 N. W. 491; Courtright v. Consolidated Independent School District, 203 Iowa 26, 212 N. W. 368. To put it in a more simple way, if section 4237 is disregarded and a teacher is discharged, then she can maintain an action at law for her salary; if, on the other hand, the aforesaid section is complied with, then she has no right to maintain the action at law in the first instance, but must appeal to the county superintendent. This has been the trend of all our later decisions. We think this rule is clear cut and is in accordance with the holdings of the

court, regardless of the holding in the Kirkpatrick case, 53 Iowa 585, 5 N. W. 750.

It is insisted, however, by the plaintiff that the provisions of the aforesaid section 4237 of the Code were so wholly ignored and not complied with by the board that therefore the action of the board was an entire nullity. We realize that a proceedings of this kind cannot be carried out with the formality of the usual court proceedings. The purpose of this statute, as we view it, is to ignore the set procedure of courts in matters of this kind, and to summarily investigate the charges that are before the board, to the end that the board may intelligently act thereon.

It is insisted that in reality no charges were filed with the board. True, what was filed is not in formal shape and is poorly phrased, but it did contain a complaint signed by patrons of the school charging the teacher with incompetence. We think in this respect it was sufficient. While, of course, proceedings of this character are usually carried on by those unlettered in the law, and in this case some matters were irregular, and there might be a disposition on our part under some circumstances to hold that the law was not complied with in some respects, yet, in the light of the record and the admissions made by the teacher herself as heretofore set out, we think the board was justified in discharging the teacher and that it had jurisdiction to so act. This being true, we cannot hold that the proceedings were void or invalid. It follows, therefore, under the rules we have heretofore laid down, that the proceedings were had here under the aforesaid section 4237, and that the board discharged said teacher as the result of such proceedings, irregular as they are in some respects. It must be held that it was the duty of the teacher, under such circumstances, to appeal to the county superintendent, and having failed so to do, she cannot maintain this action in so far as her claim for salary accruing after the entry by the board of her discharge is concerned.

■■■ For the salary that she earned up to the time of her discharge, and for which she did not receive payment, the claim is that she is not entitled to the same because she failed to comply with the statute (section 4339) requiring a report at the end of the term. We do not think this section of the statute has application to the conditions existing before us. The board

having officially discharged this teacher before the expiration of her contract, we do not think it is in very good position to raise this question. We reach the conclusion, therefore, that the defendant having admitted that it owes the plaintiff for the time which she taught up until her discharge, and for which she has not been paid, the court should have given her judgment for that amount. It was right in refusing to allow her to recover for the balance of her contract after she was discharged. The cause is remanded for a judgment in accordance with this finding.

Modified in part; affirmed in part; remanded.

DONEGAN, C. J., and ANDERSON, KINTZINGER, HAMILTON, RICHARDS, STIGER, and PARSONS, JJ., concur.