No. 35,640

E. L. CUNNINGHAM, *Appellant*, v. H. C. BLYTHE et al., *Appellees.*

(127 P. 2d 489)

Opinion filed July 11, 1942.

*Bert W. Strnad,* of Council Grove, and *I. T. Richardson,* of Emporia, were on the briefs for the appellant.

*A. Harry Crane,* of Topeka, argued the cause, and *Harry M. Tompkins,* of Council Grove, and *Ward D. Martin,* of Topeka, were on the briefs for the appellees.

The opinion of the court was delivered by

Hoch, J.: This was an action to recover from county commissioners and their bondsmen for damages which the plaintiff alleged resulted from the wrongful taking and leasing of real estate belonging to him. The appeal is by the plaintiff from an order sustaining defendants' objection to the introduction of evidence, and from judgment thereupon entered for the defendants.

Treating the objection to introduction of evidence as tantamount to a motion for judgment on the pleadings and the opening statement, the question here is whether upon the allegations of the petition and the admissions of the opening statement and of the reply, the plaintiff stated a cause of action.

The transactions out of which this action arose were before this court in the recent case of *Morris County Comm'rs v. Cunningham,* 153 Kan. 340, 110 P. 2d 783. It will be helpful to refer first to the former case before attempting to summarize the rather lengthy pleadings in this case.

Plaintiff Cunningham owned several lots in Council Grove, Kan., on which were located a number of buildings. In 1932 the property was advertised and sold for delinquent taxes of 1931 and some prior years, but those taxes were compromised and paid. Taxes for several subsequent years were unpaid, but there was no sale for taxes until 1939, when the property was sold for the delinquent taxes of 1938 and prior years and was bid in by the county. Shortly thereafter the county commissioners took possession of the property and made various leases to tenants and collected the rent for the purpose of applying such rents upon the delinquent taxes. The commissioners based their right to take possession, hold and lease the property, upon G. S. 1935, 79-2701, which has since been repealed and superseded by G. S. 1941 Supp. 79-2706. (Laws 1941, ch. 375, §§ 30, 35.) Section 79-2701 read as follows:

"That in all cases where lands or town lots are sold for delinquent taxes lawfully assessed, and bid in at such tax sale for the county in which they are situated, *and held by the county under such tax sale for a period of three years or more from the date of such sale,* the board of county commissioners may take possession of and lease the same to the highest bidder therefor, for a period of one year, and to continue to so lease the same until the amount due the county for taxes thereon shall be fully paid." (Italics supplied.)

Upon refusal of one of the holdover tenants to pay rent to the county or to vacate the premises, the commissioners brought action for rents and for forcible detainer. From a judgment in favor of the plaintiffs the defendant tenant appealed to this court, where the judgment was reversed. We held that while there was no evidence of bad faith, the commissioners had acted without lawful authority; that they had taken possession of the property for leasing purposes within a few months after it had been bid in by the county, contrary to the plain provision of the statute that such action could not be taken until three years had elapsed after the property had been bid in by the county at sale for delinquent taxes. We said that compliance with the conditions of the statute constituted a condition precedent to the exercise of any jurisdiction in the matter by the commissioners. Upon reversal of the judgment, the possession of the property was returned, in due course, to the owner, together with the net rentals collected by the commissioners. The instant action followed.

In his amended petition in this action, the owner, Cunningham, alleged that the commissioners took possession of the property on December 15, 1939, without any lawful right or authority and from that date until May 1, 1941—

"Forcibly and unlawfully held possession of the said property and deprived the plaintiff of the possession thereof, disorganized it; that is, suffered the loss of the tenants therein and removed the tenants therefrom, allowed the property to deteriorate and become and remain in bad repair, namely the roof to become damaged and leak, plaster to become knocked off, doors to be knocked down and damaged, windows broken and not repaired and general depreciation of the buidings and their equipment, greatly and seriously damaging the plaintiff in matters more fully hereinafter set out."

Following these general allegations, the petition set out various items of alleged loss and damage, not necessary to recite here in detail. They included alleged loss of rentals aggregating $3,245; "destruction of the said business to which said buildings were adapted and used," with damage amounting to $5,500; various injuries to roof, floors, doors, windows, plaster, etc., through lack of care, failure to make repairs when needed, etc., in a total amount of approximately $800; trial expenses, attorneys' fees, etc., in the former litigation, about $500. The concluding paragraph of the petition alleged:

"That the said defendants jointly and successively in each, every and all acts done by the said defendants in depriving plaintiff of her property as aforesaid, neither well, faithfully, nor correctly performed or executed their duties as

county commissioners of Morris county, Kansas, but in all that the said defendants did as aforesaid, while pretending to act for Morris county, Kansas, violated their duty to well, faithfully, and correctly perform their duties as county commissioners of Morris county, Kansas, and acted beyond their duty and jurisdiction as county commissioners of Morris county, Kansas, to the injury and damage of the plaintiff as aforesaid, and the bondsmen of said defendants respectively and as aforesaid are jointly bound with said defendants Blythe, Brown, Johnson and Lee, to indemnify and recoup the plaintiff for her loss and damages sustained by reason of the acts of the defendants as aforesaid."

The prayer was for judgment "against the defendants and each of them" in the sum of $10,026.43.

The answer of the commissioners alleged that "they acted as the board of county commissioners of Morris county, Kansas, under section 79-2701 and companion sections of the Revised Statutes of Kansas of 1935 in taking over the property for rental and payment of delinquent taxes"; that the taxes on the property were unpaid "for more than three years prior thereto"; that taxes were delinquent each year from 1932 to 1939 in a total amount of $4,796.23; that the board of county commissioners did—

"Before taking over said property, make inquiry of the then county treasurer of Morris county, Kansas, to wit, Ethel Colyer, and of the then county clerk of Morris county, Kansas, to wit, W. C. Owen, as to the length of time that taxes were delinquent and the amount of back taxes upon the property involved herein and were advised that it was for the years and in the amounts heretofore set out; that the above information was requested and secured from said county treasurer and said county clerk by the board of county commissioners in the presence of the county attorney of Morris county, Kansas, to wit: Walter E. Hembrow; that the said *Walter E. Hembrow, attorney, was fully advised of all of the facts and information which was in the possession of said members of the board of county commissioners; that said board members requested advice of said county attorney as to what should be done to collect said back taxes and that they were advised by said county attorney to proceed under section 79-2701 of the Revised Statutes of Kansas of 1935 to take over and rent said property* and apply the proceeds therefrom to the payment of the back taxes against the property; that said board of county commissioners followed the advice of the county attorney." (Italics supplied.)

It was further alleged in the answer that leases were made at the best rentals that could be secured, that the net rentals from January 5, 1940, to March 12, 1941, amounting to $1,016.88, were paid over to the plaintiff following the decision in the former case. Further, that the property was located "in the flood district" of Council Grove, and that during the same period there were many vacancies of other property in Council Grove, and that it "would be grossly in-

equitable" to permit the plaintiff to recover damages as long as taxes on the property were delinquent in the sum of $6,832.25. Defendants denied that they had failed to keep the property in repair. In a supplemental answer they plead—

"That in event plaintiff should be entitled to recover anything in this action, there should be set off against any claim to which she might be entitled the sum of $6,832.25 for taxes due and unpaid."

Plaintiff's reply was a general denial of all averments which in any way contradicted those of the petition. In his opening statement, counsel for plaintiff said:

"As Mr. Crane has said, in this lawsuit their good faith is not questioned; we are not challenging their good faith; we are not alleging that they acted maliciously, but we are alleging that they were guilty of malfeasance. They did that which they had no legal authority whatsoever to do, and if the plaintiff was damaged by reason of their acts we think it is the law of this state and we think it is true under the pleadings as we have them here that they are responsible;"

Questions of fact as to whether damage to the property was caused or negligently permitted by defendants, whether avoidable loss of rentals resulted from the way the property was handled by defendants, and many other matters were left in issue. As to these issues of fact, we must, however, here treat the situation as in case of demurrer, and assume the facts to be as alleged, admitted or not denied by the plaintiff.

What, then, are the essential facts upon which we must determine whether a cause of action was stated? Summarized: that the commissioners took possession of the property when it had not been held for a period of three years after being bid in by the county; that they continued to deprive the plaintiff of the possession and use of the property from about December 15, 1939, to May 1, 1941; that during that period they assumed and exercised full power to lease the property; that loss and damages resulted from failure to make repairs and properly to care for the property as alleged, and that the other allegations of loss and damage suffered were true; that the county commissioners acted in good faith in taking possession and leasing the property; that the commissioners made inquiry of the county treasurer and the county clerk as to the length of time the taxes were delinquent and the amount of such delinquent taxes; that they were advised that taxes were delinquent for the years 1932 to 1939 in a total amount of $4,796.23; that said tax information was secured from the treasurer and clerk "in the presence of"

the county attorney, who "was fully advised of all the facts and information" which was in their possession; that they "requested advice of said county attorney as to what should be done to collect said back taxes and that they were advised by said county attorney to proceed under section 79-2701 . . . to take over and rent said property and apply the proceeds therefrom to the payment of the back taxes."

We first note a controversy as to whether the commissioners alleged and the reply admitted that in taking over the property without waiting for the three-year period to run, they acted upon the advice of the county attorney. It must be admitted that the allegation of the answer on this point—not denied by the reply—is not clear. The allegation was that they were advised by the county attorney *"to proceed under section 79-2701* . . . to take over and rent said property." Appellant contends that this is simply an allegation that the county attorney advised them to proceed under section 79-2701 and that if they had done so they would have waited for three years as the section requires. We think, however, that the allegation, more liberally construed, means that the county attorney advised them that they had a right, under the section, to take over the property at that time. This interpretation is fortified by the later statement of the answer that they "followed the advice of the county attorney."

We come to the main issue of whether, under the facts stated, the commissioners were absolved from liability, as a matter of law. In determining that issue we must first consider the nature and extent of their jurisdiction. It is axiomatic that they have only such powers as are conferred by statute. Their general powers are enumerated in G. S. 1935, 19-212. The enumeration includes no general power in connection with the collection of taxes. Their entire lack of such jurisdiction has been declared in numerous decisions. (*Brown v. The State,* 73 Kan. 69, 72, 76, 84 Pac. 549; *The State v. Dickinson County,* 77 Kan. 540, 542, 543, 95 Pac. 392; *Haucke v. Morris County,* 115 Kan. 659, 660, 224 Pac. 64; *State, ex rel., v. Sedgwick County Comm'rs,* 150 Kan. 143, 91 P. 2d 2.) In these decisions, the fact has been emphasized that the legislature has adopted a complete scheme for property assessment, levy and collection of taxes and that when the commissioners enter the field of tax collection—except under some special statute empowering them to do so—they invade the duties specifically placed upon other of-

ficials, and their acts are *ultra vires* and void. Furthermore, the method prescribed for the recovery of delinquent taxes being purely statutory, no method exists apart from the statute. (*Ness County v. Light & Ice Co.*, 110 Kan. 501, 204 Pac. 536.) Under the complete legislative scheme for securing revenues, different officials are clothed with different duties. The assessors have certain duties, the county clerk has certain duties in preparation of the tax rolls and their certification to the county treasurer, and the commissioners have certain duties with reference to apportionment, levying, and the equalization of valuations and assessments, etc. In this general scheme the *tax collecting* officer is the county treasurer. (G. S. 1935, 19-515.) And it is the county treasurer, and not the commissioners, whose duty it is to bid in the property for the county in case it is offered at tax sale and no offer for the amount of the taxes is received. (G. S. 1935, 79-2311.) Neither in their answer nor in their argument here do the appellees claim any jurisdiction over collection of taxes. They only alleged that they acted under G. S. 1935, 79-2701, upon the advice of the county attorney. And since they were wholly without jurisdiction to act at that time under that statute, the conclusion is inescapable that they are in precisely the same situation they would be in if 79-2701 had never been enacted. We are therefore faced squarely with the question of whether in performing acts wholly outside their jurisdiction the commissioners are free from liability because they are public officials and are acting without malice and under the advice of the county attorney.

Appellees call attention to the provision of 79-2701 that the commissioners "*may* take possession of and lease," etc. They say that the word *may* implies discretion, and on that basis they invoke the well-established rule—to which much of their brief is devoted—that when acting in a quasi-judicial capacity, public officers generally are entitled to immunity from civil liability to the same extent as are judicial officers. There is no controversy here as to that rule. Also, we may accept the view that the word "may" implies the exercise of judgment or discretion. But the trouble with the argument in this case is that the power to exercise discretion evidenced by the word "may" did not come into existence until three years had elapsed. The commissioners had not yet acquired any jurisdiction within which to exercise discretion.

In support of the rule of immunity for quasi-judicial officers, appellees give us quotations from various textbook writers. The cita-

tions fully support the well-established rule. But in every one of the passages quoted, the limitation is stated that immunity attaches only where the officers are acting *within their jurisdiction.* For illustration:

"When so acting (as a quasi-judicial officer), he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, *provided the acts complained of are done within the scope of the officer's authority.*" (22 R. C. L. 485.)

"The officers of a municipal corporation are not liable for errors or mistakes of judgment in the performance of acts *within the scope of their authority as to which they are empowered to exercise judgment and discretion . . .*" (1 Dillon, Municipal Corporations, 5th ed., 771.)

"The general rule protecting judges from civil liability for *acts within the limits of their jurisdiction* applies to officers exercising quasi-judicial powers. . . ." (46 C. J. 1043.)

"With respect to the liability to a private action of an officer performing a judicial or quasi-judicial act *in a case where he has jurisdiction,* the rule is forcibly and correctly stated . . ." (Throop, Public Officers, 673.)

"But in order to render the quasi-judicial officer exempt, *he must, like the judicial, keep within the limit, fixed by law, of his jurisdcition,* for if he exceeds it, except as the result of a mistake of fact, he will be liable to the party injured." (Mechem, Public Offices and Officers, p. 427, § 641.)

Many additional references might be given to show that the general doctrine of immunity is limited to acts performed within jurisdiction. (See 46 C. J. 1043, ¶ 327, and cases there cited; 22 R. C. L. 479, 485; Mechem's Public Offices and Officers, 427-430; *Waldron v. Berry,* 51 N. H. 136; *Mygatt v. Washburn,* 15 N. Y. 316.)

Appellees quote from Mechem, *supra,* pp. 421 to 424, citing many cases wherein public officers have been held immune, and call our special attention to the case of "county commissioners in deciding upon an application for a permit to sell intoxicating liquors." (*State v. Commissioners,* 45 Ind. 501.) But in the Indiana case the commissioners had statutory authority, judicial in character, over issuance of liquor permits and the court simply followed the usual rule in refusing mandamus to control their discretionary power. As to the other illustrative cases listed—insofar as they are at all in point—we think they all involve the exercise of judgment or discretion *within the general scope of the officers' powers.*

There are many cases, it is true, which hold that immunity applies to mistakes of law as well as to mistakes of fact. Nearly all such decisions deal with situations where general jurisdiction of the subject matter existed but where mistake was made in applying

conferred powers to a particular case. (Mechem, Public Offices and Officers, 416, 417.) The situation is very different where no general jurisdiction exists.

But what shall be said as to immunity in a case where an officer makes a mistake of law as to his jurisdiction? Appellant does not argue that point and cites no authorities. Appellees give us only one citation and upon analysis we do not find in it any support for immunity in the instant case. Appellees quote from Mechem, *supra*, 427, 428, as follows:

"As to the rule which should apply in the case of a quasi-judicial officer who is called upon to decide from the facts presented to him whether he has jurisdiction or not, and who thereupon erroneously decides in the affirmative, the authorities directly in point are not clear, but upon principle it would seem that the same rule should apply which has been noticed in respect of inferior courts and magistrates—that he is not liable where a case, *belonging to a class of which he has jurisdiction,* is by complaint, affidavit, petition or other prescribed kind of proceeding, *put at least colorably under his jurisdiction."* (Italics supplied.)

It will be noted that Mechem limits a quasi-judicial officer's immunity—where he mistakenly oversteps jurisdiction—to cases "belonging to a class of which he has jurisdiction," and which are "put at least colorably under his jurisdiction." That rule seems to run through the decisions generally. An able and comprehensive discussion of this subject will be found in the case of *Broom v. Douglass,* 175 Ala. 268, 57 So. 860, extensively annotated in 44 L. R. A., n. s., 164 *et seq.* Among the principles laid down in the Alabama case is the following:

"(3) *A fortiori,* the judge of a court of inferior or limited jurisdiction is liable when he acts without a general jurisdiction of the subject matter, even though his act involves his decision, made in perfect good faith, that he has such jurisdiction." (p. 272.)

(See, also, 16 R. C. L. 346.)

Are the conditions for immunity stated by Mechem, *supra*, met in the instant case—that is, "belonging to a class" over which the commissioners generally have jurisdiction, and having a "color of jurisdiction"? Clearly not as to the first conditions, because there is no class of properties as to which the commissioners have general power to collect taxes. What about the second test—that is, "color of jurisdiction"? The only statute within our knowledge under which any "color of jurisdiction" might possibly be claimed, though appellees do not invoke it, is the provision giving power to county

commissioners "to make orders concerning property belonging to the county." (G. S. 19-212, *First*.) But we must conclude that that statute affords no relief. This property did not belong to the county simply because the county treasurer had bid it in. The county had neither title nor possession when the commissioners took it over from the owner and had taken no steps to enforce its lien upon the property. (*Smith v. City of Frankfort*, 2 Kan. App. 411, 417; *Warner v. Pile*, 105 Kan. 724, 727, 185 Pac. 1041; *Crawford County Comm'rs v. Kurent*, 138 Kan. 556, 27 P. 2d 226.) And even if we should go to the extreme length of holding that the property "belonged" to the county within a broad construction of the statute, *supra*, the fact would still remain that the commissioners in taking action concerning it invaded a field which they were without authority to enter.

The established rule or principle here adhered to may seem, in cases, to be harsh in its application. It may be thought so in the present case, since it is conceded that the commissioners acted in good faith and reaped no personal advantage from the acts performed outside their jurisdiction. But it is the hard case which often makes bad law. And it would not do to say that no liability can be asserted against public officers for damages resulting from acts performed wholly outside their jurisdiction and without even a "color of jurisdiction," provided only that they act under advice of counselors and in good faith. Such a rule, while perhaps achieving a just result in some instances, would throw wide the door to countless invasions of private rights and personal liberties. (Mechem, Public Offices and Officers, 428, 429.)

It follows from what has been said that the trial court erred in sustaining the objection to admission of evidence and in entering judgment for defendants. Plaintiff was entitled to a trial. Needless to say, we are in no way passing upon questions of alleged damage or otherwise upon the merits of the matter. All that is for the trier of facts.

One other matter should be mentioned. One of the defendants, Olof Johnson, retired as a commissioner and was succeeded by another of the defendants, John Lee, on January 13, 1941, something more than a year after possession of the property was taken. Whatever question there may be concerning defendant Lee's status as to this litigation has not been presented here and we are not passing upon it.

The judgment is reversed, with direction to proceed in harmony with this opinion.

DAWSON, C. J., and ALLEN, J., dissent.