No. 47,145

CLEAR WATER TRUCK COMPANY, INC., and CLAUDE HARPSTER, *Appellants,* v. M. BRUENGER & COMPANY, INC., and MAURICE BRUENGER, *Appellees.*

(519 P. 2d 682)

Opinion filed March 2, 1974.

*Fred A. Beaty,* of Beaty, Hodge and Wood, of Wichita, argued the cause and was on the brief for the appellants.

*Albert L. Kamas,* of Render, Kamas and Kelly, of Wichita, argued the cause and was on the brief for appellees.

*Stephen M. Joseph,* of Wichita, of counsel for appellees.

The opinion of the court was delivered by

KAUL, J.: Plaintiffs-appellants brought this action to recover damages which they alleged resulted from publication by defendants-appellees of allegedly libelous statements in a proceeding before the Interstate Commerce Commission. In their answer to plaintiffs' petition, defendants alleged the statements were relative to the issue involved and were filed in support of their "Protestant's Motion to Re-Open and Protestant's Petition for Reconsideration" in the proceedings before the Interstate Commerce Commission.

Simultaneously with the filing of their answer, defendants filed a motion for judgment on the pleadings pursuant to K. S. A. 1973 Supp. 60-212 (c). Defendants' motion was based on the ground of absolute privilege. In due course the motion was heard and sustained by the trial court. Thereafter plaintiffs perfected this appeal.

The overall issue presented is whether absolute privilege should extend to defendants' conduct as it is set out in plaintiffs' petition. A motion for judgment on the pleadings under 60-212 (c), filed by a defendant, is based upon the premise that the moving party is entitled to judgment on the face of the pleadings themselves and the basic question to be determined is whether, upon the admitted facts, the plaintiffs have stated a cause of action. (*Tabor v. Lederer*, 205 Kan. 746, 472 P. 2d 209.) The motion serves as a means of disposing of the case without a trial where the total result of the pleadings frame the issues in such manner that the disposition of the case is a matter of law on the facts alleged or admitted, leaving no real issue to be tried. (Gard, Code of Civil Procedure Annotated, § 60-212 [c], p. 55.) The motion operates as an admission by movant of all fact allegations in the opposing party's pleadings. (1 Vernon's Kansas Statutes Annotated, Code of Civil Procedure [1973 Pocket Parts], 60-212 [c], Authors' [Fowks, Harvey and Thomas] Comments.)

Plaintiffs' petition incorporated by reference a decision and order of the Interstate Commerce Commission, dated June 13, 1973, and a "Motion to Re-Open" and "Petition for Reconsideration" filed by defendants on July 8, 1972.

From the petition and attached exhibits it appears that both plaintiff and defendant corporations operated trucking businesses. Both parties were engaged in interstate commerce as contract carriers of meat and packing house products over irregular routes. Plaintiff Claude Harpster is the chief executive officer of plaintiff Clear Water Truck Company, Inc., and defendant Maurice Bruenger is the principal stockholder and chief executive officer of defendant M. Bruenger & Company, Inc. For brevity we shall refer to plaintiffs collectively as Clear Water or plaintiffs; likewise, to defendants as Bruenger or defendants, and Interstate Commerce Commission as the Commission.

Clear Water filed an application for a permit and Bruenger appeared as a party protestant before the Interstate Commerce Commission. With the "Motion to Re-Open" after granting of Clear

Water's permit, Bruenger attached a statement of one Marion R. Hoover as a supporting exhibit. Hoover is traffic coordinator for a Liberal, Kansas, meat packing house whose freight business was a subject of the Commission proceedings. Hoover's statement was to the effect that testimony given by Claude Harpster, under oath, in the Commission proceedings was false.

Plaintiffs alleged that defendants prepared Hoover's statement, submitted it to him, that he signed it without reading it; that defendants then caused it to be notarized; and that the statement was published before the Commission by defendants for the purpose of accusing Claude Harpster of falsely testifying before the Commission Examiner. Plaintiffs alleged that as a result of the solicitation and publication of the false and libelous statement both plaintiff Harpster and plaintiff Clear Water suffered substantial damages. Plaintiffs in their petition alleged a series of events culminating in the filing of the statement; however, no claim is made that any of the activities prior to the filing of the Hoover statement would constitute a cause of action.

In their answer defendants admit filing before the Commission their "Protestant's Motion to Re-Open" with the supporting verified statement of Hoover. In their motion for judgment on the pleadings defendants alleged that their action in preparing and filing the motion with the supporting verified statement before the Commission constituted the preparation of pleadings before a judicial body; that the contents thereof enjoyed an absolute privilege and; thus, could not be made a basis for an action for damages resulting from an alleged libel and slander. No issues of fact material to the defense of absolute privilege were left in dispute. Thus, the action was in proper posture for disposition on a motion for judgment on the pleadings under K. S. A. 1973 Supp. 60-212 (c). The basis of the trial court's judgment was that since the libelous statements were published in the course of a judicial proceeding by parties to the litigation, recovery for damages which may have been suffered, is foreclosed by the rule of absolute immunity.

The defense of absolute immunity in defamation actions has long been recognized in virtually every American jurisdiction. The premise upon which the rule is based is succinctly stated by Arthur B. Hanson in his work (Vol. 1) entitled "Libel and Related Torts, Absolute Privilege," § 108, pp. 85-86:

"In order to encourage use of courts for settlement of disputes and to facili-

tate the search for justice, an absolute privilege attaches to statements by any participant in a judicial proceeding which the speaker could reasonably have thought to be relevant and which were made in connection with such proceeding."

See, also, Prosser Law of Torts (4th Ed.), § 114 pp. 776-781; 50 Am. Jur. 2d, Libel and Slander, § 193, p. 696.

Concerning administrative proceedings the same author (Hanson) has this to say:

"In addition to regular judicial proceedings, an absolute privilege attaches also to administrative proceedings which are quasi-judicial in nature, such as hearings by licensing agencies or workman's compensation boards, proceedings to remove public officers or employees, and other similar activities." (§ 109, p. 86.)

In the recent case of *Thompson v. Amis*, 208 Kan. 658, 493 P. 2d 1259, cert. den. 409 U. S. 847, 34 L. Ed. 2d 88, 93 S. Ct. 53, this court had occasion to consider what constitutes a quasi-judicial function of an administrative body. Speaking through Chief Justice Fatzer we had this to say:

". . . quasi-judicial is a term applied to administrative boards or officers empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of judicial nature." (p. 663.)

A proceeding before the Commission such as that involved in the case at bar clearly falls within the concept of a quasi-judicial function. On oral argument we were informed by plaintiffs' counsel that no issue is made in this regard. Plaintiffs also concede that the statements complained of were relevant to the matter to be determined by the Commission, i. e., the fitness and capability of plaintiffs to perform the function of a contract carrier.

In this jurisdiction, if a statement or communication, given in the course of a judicial proceeding, is relevant to the issue involved therein it is privileged whether it be the testimony of a party or an affidavit filed in the proceedings. (See cases collected in Vol. 3 Hatcher's Kansas Digest, Rev. Ed. [Perm. Supp.], Libel & Slander, § 36; Vol. 6A West's Kansas Digest, Libel and Slander, § 38.) In the recent case of *Froelich v. Adair*, 213 Kan. 357, 516 P. 2d 993, the rule of absolute privilege in judicial proceedings was referred to in these terms:

". . . Judicial proceedings are absolutely privileged communications, and statements in the course of litigation otherwise constituting an action for slander, libel, or one of the invasion of privacy torts involving publication, are immune from such actions. They are privileged communications because of the overriding public interest in a free and independent court system. This

absolute privilege extends immunity to parties to private litigation and to anything published in relation to a matter at issue in court, whether said in pleadings, affidavits, depositions or open court. (*Weil v. Lynds,* 105 Kan. 440, 185 Pac. 51.)"

In the instant case the pleadings disclose that the libelous statements of Hoover were relevant to the issue before the Commission. The affidavit of Hoover was incorporated in a pleading filed by defendants who were party litigants in the quasi-judicial proceedings before the Commission. All of the elements necessary to maintain the defense of absolute privilege are shown.

Despite their admission in their brief that only the end result (*i. e.,* publication in the Commission proceedings) of defendants' activities caused damage, plaintiffs argue the publication to be privileged must be "in office" and that the incidents thereof are not shown to exist in the instant case. In support of this proposition plaintiffs refer to an article in Vol. IX Columbia Law Review entitled "Absolute Immunity in Defamation: Judicial Proceedings," pp. 463-490. The author credits the origin of the absolute privilege rule to Lord Mansfield and points out that the publication, as Lord Mansfield said, must be made:

". . . 'in office'; in other words, it must be made in the character of judge, juror, witness, litigant, or counsel, in the performance of the public duty or in the exercise of the private right upon which the immunity is based. . . ." (p. 490.)

In the instant case defendants were exercising a private right as litigants in incorporating the libelous statements in a pleading filed in a judicial proceeding before the Commission. Publication was made "in office" as we understand the definition given the term in the article referred to.

Plaintiffs cite only the case of *Laun v. Union Electric Co. of Missouri,* 350 Mo. 572, 166 S. W. 2d 1065, in support of their position. The *Laun* case involved an attempt to extend the privilege to defendants who were not parties or otherwise directly involved in the litigation in which the libelous statements were published. *Laun* alleged that defendants Union Electric Co. of Missouri and a holding company, The North American Company, controlled and owned all of the stock of Union Electric Company of Illinois and the Missouri River Power Company, and because of their control defendant companies caused and procured Union Electric of Illinois and Mississippi River Power Company to file complaints containing the libelous matter in the United States District Court. Since

neither of the defendants sued by *Laun* for libel were parties or witnesses to the underlying action, the Missouri court reasoned that absolute privilege did not extend to them even though they had caused and procured the publication of the defamatory material through immune parties. In the instant case, as we have previously noted, defendants, as parties protestants, where directly involved in the Commission proceedings—the underlying action.

The action herein was in a proper posture for judgment on the pleadings and the pleadings demonstrated that with respect to the publication of the material in question the defendants were protected by absolute privilege.

The judgment is affirmed.