No. 48,123

E. Gene Schulze, *Appellant*, v. Board of Education, School District No. 258, Humboldt, Kansas, *Appellee*.

(559 P. 2d 367)

Opinion filed January 22, 1977.

*Charles F. Forsyth,* of Erie, argued the cause, and *Clark M. Fleming,* also of Erie, was with him on the brief for the appellant.

*J. Franklin Hummer,* of Topeka, argued the cause, and *John W. White,* of Humboldt, was with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: The plaintiff, E. Gene Schulze, was principal of the elementary school in Humboldt, Kansas, and was employed by the defendant school board. The board, after complaint and hearing,

issued a letter of reprimand and placed it in plaintiff's personnel file. Plaintiff filed suit seeking an injunction against the action of the board and damages for malicious prosecution, libel and slander. The trial court sustained defendant's motion for summary judgment. Plaintiff appeals. We conclude the trial court was correct in sustaining the summary judgment and the case should be affirmed.

Plaintiff alleges Richard Coykendall, a patron of the Humboldt school district, made various libelous and slanderous statements about him to members of the community. These allegations made their way to the defendant board in a complaint filed by Coykendall and other school patrons on July 2, 1973.

As a result of the complaint the board sent a letter to plaintiff requesting he resign as principal of Humboldt Elementary School. This action was taken without a hearing and violated the board's policy handbook which stated:

". . . Neither the Board as a whole or any individual member will entertain or consider communications and/or complaints from teachers, parents, or patrons, until they have first been referred to the Superintendent. Only in case satisfactory adjustment cannot be made by the Superintendent and his assistants, shall communications and/or complaints be referred in writing to the Board. The Superintendent shall report complaints to the Board, and persons complaining shall be requested to put the complaint in writing. In such event, the Board will, after considering the evidence submitted by the Superintendent, if it deems advisable, grant a hearing to the parties interested. Such a hearing will be in executive session."

Plaintiff refused to resign and requested a public hearing when advised the matter would be set for an executive hearing.

On August 9, 1973, the school district held a public hearing. Plaintiff had notice of this hearing and appeared with his attorney. Although he protested the hearing was unlawful and in violation of the policy handbook, plaintiff participated in the hearing by calling witnesses on his behalf.

On November 6, 1973, the board announced its ruling. It found that the plaintiff had engaged in acts amounting to unprofessional and unbecoming conduct and that he had violated provisions of the policy handbook. It found no basis for "discontinuance of the contract of the said E. Gene Schulze," but issued the letter of reprimand.

On February 8, 1974, plaintiff filed an action alleging defendant held an unlawful public meeting which resulted in the issuance of findings which were widely published, all in violation of the handbook. Plaintiff further alleged defendant had publicized the illegal

findings or alleged orders of defendant, causing irreparable injury to plaintiff's status as a principal, and defendant should be enjoined from making any further publications. Because defendant had been guilty of malicious prosecution, libel, slander, defamation and violation of rights of privacy, plaintiff prayed for $100,000 in damages. Defendant answered, admitting the facts heretofore set forth, but denied liability on the basis the petition failed to state a claim upon which relief could be granted, governmental immunity, and absolute privilege in the performance of official acts.

On July 23, 1975, the district court granted summary judgment in favor of defendant. Its memorandum opinion stated:

"The failure to comply with the policy in the handbook is a matter to be raised in the proceeding. The exclusive remedy from the proceedings before the Board of Education is by appeal under K. S. A. 60-2101 (a). (*Thompson v. Amis,* 208 Kan. 658) The plaintiff agreed and requested that the hearing before the Board should be open and public and cannot complain about adverse publicity resulting.

"Furthermore, proceedings before the Board of Education are quasi-judicial and, as such, such communications are therefor absolutely privileged. (*Froelich v. Adair,* 213 Kan. [357], 360; *Clear Water Truck Co., Inc., v. Bruenger & Co., Inc.,* 214 Kan. 139.)"

Plaintiff urges this court to find that the actions of the board were void as it had no jurisdiction because it failed to follow its policy handbook. Using this as a point of departure, he further argues that since the board had no jurisdiction there was no decision to appeal under K. S. A. 60-2101 (*a*) [Corrick] (now K. S. A. 60-2101 [*d*] [Weeks]), and filing an independent action for an injunction and damages was his only remedy. Plaintiff concludes damages are in order because defendant did not act in a quasi-judicial atmosphere and its actions were malicious.

The pivotal issues in this case are whether the board had jurisdiction to conduct the hearing on the complaint against plaintiff and whether the hearing was a quasi-judicial function. If so, the board had the power to conduct the hearing and issue a reprimand, protected from liability for civil suits, and plaintiff's only recourse was an appeal pursuant to K. S. A. 60-2101 (*a*).

The right to hire, fire, and discipline employees is within the authority granted to a school board by statute. (K. S. A. 72-8205.) The board, however, must provide due process. (*Wertz v. Southern Cloud Unified School District,* 218 Kan. 25, 542 P. 2d 339, and cases cited therein.) The essential elements of due process of law are notice and an opportunity to be heard, and to defend in an orderly

proceeding adapted to the nature of the case. (*Rydd v. State Board of Health,* 202 Kan. 721, 451 P. 2d 239; *Carrigg v. Anderson,* 167 Kan. 238, 205 P. 2d 1004; *Endicott v. Van Petten,* 330 F. Supp. 878 [D. C. Kan. 1971].)

We have no hesitancy in holding that a public employee who has received notice of a hearing and has appeared with benefit of counsel to present evidence in his defense has waived any technical defects in the procedure and has been accorded due process. (*Million v. Board of Education,* 181 Kan. 230, 310 P. 2d 917; *Van Peursem v. Consolidated Ind. Sch. Dist.,* 240 Iowa 1100, 38 N. W. 2d 615 [1949]; *Chadwick v. Grant Ind. Sch. Dist.,* 238 Iowa 498, 28 N. W. 2d 32 [1947]; *Schrader v. Cameron Twp. Sch. Dist.,* 221 Iowa 799, 266 N. W. 473 [1936].)

The test for determining whether the acts of an administrative board are ministerial or quasi-judicial is set forth in *Gawith v. Gage's Plumbing & Heating Co., Inc.,* 206 Kan. 169, 476 P. 2d 966:

"There is a distinction between the types of decisions rendered by different administrative agencies; and some such agencies perform judicial or quasi-judicial functions while others do not.

"In determining whether an administrative agency performs legislative or judicial functions, the courts rely on certain tests; one being whether the court could have been charged in the first instance with the responsibility of making the decisions the administrative body must make, and another being whether the function the administrative agency performs is one that courts historically have been accustomed to perform and had performed prior to the creation of the administrative body.

"A judicial inquiry investigates, declares and enforces liabilities as they stand on present or past facts and under laws supposed already to exist, whereas legislation looks to the future and changes existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power.

"In applying tests to distinguish legislative from judicial powers, courts have recognized that it is the nature of the act performed, rather than the name of the officer or agency which performs it, that determines its character as judicial or otherwise." (Syl. 1, 2, 3, 4.)

In *Thompson v. Amis,* 208 Kan. 658, 663, 493 P. 2d 1259, cert. denied 409 U. S. 847, 34 L. Ed. 2d 88, 93 S. Ct. 53, we stated:

"It may be added that quasi-judicial is a term applied to administrative boards or officers empowered to investigate facts, weigh evidence, draw conclusions as a basis for official actions, and exercise discretion of judicial nature."

(See also, *Stephens v. Unified School District,* 218 Kan. 220, 546 P. 2d 197, and cases cited therein.)

Applying the test to the instant case, we hold that the board functioned in a quasi-judicial manner when it administered a reprimand to its employee as a result of a complaint filed by a patron.

Since defendant had jurisdiction to hold the hearing and it was quasi-judicial in nature, plaintiff's action for injunction is precluded by K. S. A. 60-2101 (*a*). Under this statute the judgment or final order of a tribunal, board or officer exercising judicial or quasi-judicial functions must be appealed to the district court for review. Failure to comply with the statute prohibits a collateral attack by an independent action. In *Thompson v. Amis*, supra, we held:

"The Civil Service Board of Kansas exercises quasi-judicial functions and if a party is aggrieved by its order, the remedy is by appeal pursuant to K. S. A. 60-2101 (*a*), which remedy is exclusive." (Syl. 7.)

In *Cunningham v. Blythe*, 155 Kan. 689, 127 P. 2d 489, it was said:

" 'When so acting (as a quasi-judicial officer), he is usually given immunity from liability to persons who may be injured as the result of an erroneous decision, *provided the acts complained of are done within the scope of the officer's authority.*' ( 22 R. C. L. 485.)

. . . . . . . . . . . . .

" 'The general rule protecting judges from civil liability for *acts within the limits of their jurisdiction* applies to officers exercising quasi-judicial powers. . . .' ( 46 C. J. 1043.)" ( p. 696.)

Professor Prosser, when speaking of absolute privilege in defamation suits, agrees that the privilege given to judges also applies to officers in quasi-judicial proceedings:

"The 'judicial proceeding' to which the immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. It includes, for example, lunacy, bankruptcy, or naturalization proceedings, and an election contest. It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial, or 'quasi-judicial,' in character. . . ." ( Prosser, Law of Torts [4th Ed.], § 114, pp. 779-80.)

In *Clear Water Truck Co., Inc. v. M. Bruenger & Co., Inc.*, 214 Kan. 139, 519 P. 2d 682, quoting from Hanson, Libel and Related Torts, Absolute Privilege (Vol. 1), § 109, p. 86, we stated:

" 'In addition to regular judicial proceedings, an absolute privilege attaches also to administrative proceedings which are quasi-judicial in nature, such as hearings by licensing agencies or workman's compensation boards, proceedings to remove public officers or employees, and other similar activities.' " ( p. 142.)

The underlying principle upon which the doctrine of privileged communications rests is public policy. This is especially the case with absolute privilege. Judicial officials and administrative officials acting in a quasi-judicial capacity are charged with the responsi-

bility of protecting the best interests of the public by hearing and weighing evidence and rendering a decision. It is in the interest of the public that the best qualified persons serve in that capacity and that they be exposed to all the facts. But it becomes impossible for such officers to act if they must fear civil action for the exercise of judicial judgment. The public good therefore requires the cloak of absolute immunity for these officials. As Judge Learned Hand stated in *Gregoire v. Biddle,* 177 F. 2d 579 (2d Cir. 1949), cert. denied 339 U. S. 949, 94 L. Ed. 1363, 70 S. Ct. 803:

". . . [I]t is impossible to know whether the claim is well founded until the case has been tried, and . . . to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake, in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. . . . In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. . . ." (p. 581.)

(See also, *Froelich v. Adair,* 213 Kan. 357, 360, 516 P. 2d 993; *Munsell v. Ideal Food Stores,* 208 Kan. 909, 920, 494 P. 2d 1063; *Stice v. Beacon Newspaper Corporation,* 185 Kan. 61, 64, 340 P. 2d 396.)

Plaintiff argues the issue is answered by what we said in *Schulze v. Coykendall,* 218 Kan. 653, 545 P. 2d 392. This was a companion case which involved the school patron who brought the complaint before the school board in the instant case. Notwithstanding the dictum in *Coykendall* that the action of the board was ministerial, we believe the weight of authority as shown by the cases herein cited is to the contrary. In disapproving the statement in *Coykendall,* we recognize the issue was not briefed or argued in that case and our attention was not directed to the plethora of authority cited herein.

For the reasons set forth in the opinion the judgment of the trial court is affirmed.

FROMME, J., dissenting and concurring: The right of a school board to hire and fire a teacher is not covered by the grant of authority in K. S. A. 72-8205. That statute relates to the general powers of the board. When this action arose in 1973, the right to hire and fire a teacher was covered by the Continuing Contract

Law, K. S. A. 72-5410, *et seq.* A due process hearing was required under the statute if the board was attempting to terminate a teacher's contract. See *Wertz v. Southern Cloud Unified School District,* 218 Kan. 25, 28, 542 P. 2d 339. The board did not proceed under K. S. A. 72-5411; instead it requested the teacher's resignation. The general district meeting which followed was not a quasi-judicial proceeding recognized in the law. However, the board was acting within its authority and jurisdiction as a public body in accepting and investigating a complaint against Mr. Schulze, and an absolute privilege attaches to its action regardless of the nature of the proceeding. A school board in hearing the general run of complaints is acting in the public service.

Absolute privilege is recognized in cases where the public service or the administration of justice requires complete immunity as in legislative, executive or judicial proceedings, the occasion for the immunity being not so much for those engaged as for the promotion of the public welfare. (*Schulze v. Coykendall,* 218 Kan. 653, 545 P. 2d 392; *Munsell v. Ideal Food Stores,* 208 Kan. 909, 920, 494 P. 2d 1063; *Stice v. Beacon Newspaper Corporation,* 185 Kan. 61, 64, 340 P. 2d 396, 76 A. L. R. 2d 687.) Such an absolute privilege attaches to acts of a school board whether the acts are ministerial or quasi-judicial as stated in *Gawith v. Gage's Plumbing & Heating Co., Inc.,* 206 Kan. 169, 476 P. 2d 966. The absolute privilege attaches to all official acts done within the scope of the officer's authority. (*Cunningham v. Blythe,* 155 Kan. 689, 127 P. 2d 489.)

For this reason I concur in the opinion affirming the trial court. However, I cannot agree that the "dictum" in *Schulze v. Coykendall,* supra, should be disapproved. The appellee in that appeal devoted two full pages of his brief in a vain attempt to convince this court that Coykendall should enjoy an absolute privilege and that the trial court was correct in entering summary judgment. I see no conflict in holding a complaining patron of a school district enjoys only a qualified privilege while a school board hearing the complaint and acting thereon enjoys an absolute privilege.

It fell my lot to write the prior opinion in *Schulze v. Coykendall,* supra, which preceded the present litigation. In *Coykendall* the libel action was filed by Schulze based upon the statements in the written petition circulated by Coykendall among the patrons of the school district and filed with the board of education. It was alleged this petition or complaint set forth facts which were wholly false and the actions of Coykendall were prompted by malice. The

district court's order granting summary judgment for defendant was reversed and the case was remanded for further proceedings. A unanimous court held that the complaint filed with the board of education enjoyed only a qualified or conditional privilege. As a result it would naturally follow that Schulze must prove actual malice and that the publication was made with knowledge the defamatory statement was false or was made in reckless disregard of whether it was false or not. We rejected the argument of the appellee that an absolute privilege attached to the circulation and filing of the petition with the school board.

The determination of whether an absolute privilege or a conditional privilege exists is a question of law to be decided by the court when the facts upon which such a determination must stand are undisputed. (*Faber v. Byrle,* 171 Kan. 38, Syl. 4, 229 P. 2d 718, 25 A. L. R. 2d 1379; *Schulze v. Coykendall,* supra.) I concur in the affirmance of the summary judgment but respectfully dissent from Syl. 1 of the majority opinion as to the statutory authority to hire and fire teachers. I further dissent from those portions of the opinion which indirectly hold the school board enjoys an absolute privilege only when engaged in quasi-judicial proceedings.